IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JASON SILVER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-1938 |
| | ) | |
| | ) | |
| TOWNSTONE FINANCIAL, INC., | ) | |
| BARRY STURNER and DAVID | ) | |
| HOCHBERG | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS
<u>MOTION FOR SUMMARY JUDGMENT ON LIABILITY</u>**

Ryan F. Stephan
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
(312) 233-1550
(312) 233-1560 f
rstephan@stephanzouras.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

I.      INTRODUCTION ..........................................................................................1

II.     PROCEDURAL BACKGROUND....................................................................1

III.    FACTUAL BACKGROUND ...........................................................................2

IV.     ARGUMENT ..................................................................................................3

        A.    Legal Standard for Summary Judgment ...............................................3

        B.    Plaintiff Did Not Satisfy Any Test for Exemption Under the FLSA or IMWL ......4

              1.    Plaintiff Was Not an Outside Sales Employee .............................4

                    a.    Both Townstone's Offices and Plaintiff's Home Constitute an
                          Employer's Place of Business.........................................5

                    b.    Plaintiff Sold Loans to Townstone-Generated Leads from
                          Townstone's Offices .....................................................7

              2.    Plaintiff Was Not a Bona Fide Administrative Employee...........................8

                    a.    Plaintiff's Primary Duty Was Inside Sales ......................9

                    b.    Plaintiff Did Not Exercise Discretion or Independent Judgment ..12

              3.    Plaintiff is Not Exempt Under the Combination Exemption....................15

        C.    Unlawful Retaliation........................................................................17

              1.    Plaintiff Was Engaged in Statutorily Protected Expression when he
                    Complained about Unpaid Overtime .........................................17

              2.    A Causal Link Exists Between Plaintiff's Protected Expression and
                    Termination.............................................................................18

V.      CONCLUSION................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Wal-Mart Stores, Inc.*,
   324 F.3d 935 (7th Cir. 2003) ........................................................19

*Ale v. Tenn. Valley Auth.*,
   269 F.3d 680 (6th Cir. 2001) ........................................................13

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................3

*Arnold v. Ben Kanowsky, Inc.*,
   361 U.S. 338 (1960) ...................................................................4

*Bankston v. State of Ill.*,
   60 F.3d 1249 (7th Cir. 1995) ........................................................4

*Barrentine v. Arkansas Best Freight Systems, Inc.*,
   450 U.S. 728 (1981) ...................................................................4

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...................................................................3

*Chao v. First Nat. Lending Corp.*,
   516 F. Supp. 2d 895 (N.D. Ohio 2006) .......................................7, 10

*Cichon v. Exelon Generation Co, LLC*,
   401 F.3d 803 (7th Cir. 2005) ........................................................18

*Dixon v. Prospect Mortg., LLC*,
   11 F. Supp. 3d 605 (E.D. Va. 2014) ...............................................7

*Hartman v. Prospect Mortg., LLC*,
   11 F. Supp. 3d 597 (E.D. Va. 2014) ...............................................10

*IntraComm, Inc. v. Bajaj*,
   492 F.3d 285 (4th Cir. 2007) ........................................................15

*Johnson v. Hix Wrecker Service, Inc.*,
   651 F.3d 658 (7th Cir. 2011) ........................................................4

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
   563 U.S. 1 (2011) ...............................................................17, 18

*Larsen v. Club Corp. of America*,
    855 F. Supp. 247 (N.D. Ill. 1994) .................................................................17

*Lutz v. Huntington Bancshares, Inc.*,
    No. 2:12-cv-01091, 2014 WL 2890170 (S.D. Ohio June 25, 2014) ................14

*Moreau v. Klevenhagen*,
    508 U.S. 22 (1993) .......................................................................................4

*O'Donnell v. America At Home Healthcare and Nursing Services, Ltd.*,
    No. 12 CV 6762, 2015 WL 684544 (N.D. Ill. Feb. 17, 2015) .........................18

*Olivo v. GMAC Mortgage Corp.*,
    374 F. Supp. 2d 545 (E.D. Mich. 2004) ........................................................10

*Pontius v. Delta Financial Corp.*,
    No. 04-1737, 2007 WL 1496692 (W.D. Pa. Mar. 20, 2007) ............................11

*Renfro v. Ind. Mich. Power Co.*,
    497 F.3d 573 (6th Cir. 2007) ........................................................................14

*Rennie v. Dalton*,
    3 F.3d 1100 (7th Cir. 1993) .........................................................................17

*Resurrection v. Shannon*,
    2013 IL App (1st) 111605 .............................................................................4

*Roe-Midgett v. CC Services, Inc.*,
    512 F.3d 865 (7th Cir. 2008) ...................................................................13, 14

*Schmidt v. Eagle Waste & Recycling, Inc.*,
    599 F.3d 626 (7th Cir. 2010) ...................................................................4, 16

*Shadduck v. United Parcel Service, Inc.*,
    No. 10 C 2203, 2011 WL 4452210 (N.D. Ill. Sept. 26, 2011) .........................17

*Skelton v. American Intercontinental University Online*,
    382 F. Supp. 2d 1068 (N.D. Ill. 2005) .........................................................19

*Tony & Susan Alamo Foundation v. Secretary of Labor*,
    471 U.S. 290 (1985) .....................................................................................4

*Troupe v. May Dept. Stores Co.*,
    20 F.3d 734 (7th Cir. 1994) ....................................................................18, 19

*Wilke v. Salamone*,

404 F. Supp. 2d 1040 (N.D. Ill. 2005) ..............................................................17

*Wolfram v. PHH Corp.*,
No. 1:12-cv-599, 2014 WL 2737990 (S.D. Ohio June 17, 2014)..................................5, 6

*Wong v. HSBC Mortg. Corp. (USA)*,
749 F. Supp. 2d 1009 (N.D. Cal. 2010) ..........................................................10

**Statutes**

Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ............................................ *passim*

Illinois Minimum Wage Law, 820 ILCS §§ 105, *et seq.*........................................... *passim*

**Rules & Regulations**

29 C.F.R. §§ 541.200, *et seq.* .................................................................... *passim*

29 C.F.R. §§ 541.500, *et seq.* .................................................................... *passim*

29 C.F.R. §§ 541.600, *et seq.* .................................................................... *passim*

29 C.F.R. §§ 541.700, *et seq.* .................................................................... *passim*

69 Fed. Reg. 22122-01 (Apr. 23, 2004) ..........................................................11

Fed. R. Civ. P. 56(a) ..........................................................................3

## I.     <u>INTRODUCTION</u>

This case involves claims that Plaintiff, Jason Silver ("Plaintiff" or "Silver") was misclassified by Defendants Townstone Financial, Inc. ("Townstone"), Barry Sturner ("Sturner"), and David Hochberg ("Hochberg") (collectively, "Defendants") as exempt from overtime pay requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS §§ 105, *et seq*. Specifically, Plaintiff alleges that Defendants willfully misclassified him as exempt and denied him overtime pay when he worked more than 40 hours per week. Plaintiff also alleges that Defendants unlawfully retaliated against Plaintiff by firing him for complaining about unpaid overtime wages, in direct violation of the FLSA.  Because Defendant has failed ***its burden*** to prove that Plaintiff is exempt, and retaliated against Plaintiff by firing him when he complained about unpaid overtime, this Court should grant Plaintiff's Motion and set this matter for trial to determine the amount of Plaintiff's damages.

## II.     <u>PROCEDURAL BACKGROUND</u>

On March 19, 2014, Plaintiff filed his Complaint seeking to recover unpaid overtime wages under the FLSA and IMWL and additional damages for Defendants' retaliation. Dkt. No. 1. On March 27, 2015, Plaintiff filed his First Amended Complaint. Dkt. No. 26. Plaintiff alleges that Defendants willfully misclassified him as exempt from the overtime provisions of the FLSA and IMWL; failed to pay overtime compensation for all hours worked in excess of 40 per week; and retaliated against Plaintiff by terminating him when he complained about unpaid overtime. Dkt. No. 26. In response, Defendants denied Plaintiff's claims and affirmatively stated that Plaintiff was exempt from the FLSA because he is a bona fide administrative employee, an

outside sales employee, highly compensated, and satisfies the combination exemption. Dkt. No. 30.

III.     **FACTUAL BACKGROUND**

Plaintiff was employed as a loan officer at Townstone Financial from on or about May 24, 2012, until February 6, 2014. Pl. L.R. 56.1 Statement of Undisputed Facts in Support of his Motion for Summary Judgment ("SOUF") at ¶ 2. Throughout Plaintiff's employment, Defendants classified him as exempt from the FLSA and IMWL. SOUF at ¶ 26. However, in choosing to classify Plaintiff as exempt, Defendants did not consult with the Department of Labor, perform any independent legal research, or perform any analysis to specify what percentage of time Plaintiff spent on particular tasks. SOUF at ¶ 29.

As a loan officer, Plaintiff primarily sold loans to Townstone clients assigned to him by Sturner and Hochberg. SOUF at ¶ 9.  Specifically, Plaintiff would receive leads from Townstone and contact such potential customers; collect required financial information, including information about income, employment history, assets, investments, home ownership, debts, credit history, prior bankruptcies, judgments, and liens. SOUF at ¶¶ 10, 38. Plaintiff would then run credit reports and enter the collected financial information into Defendant's Encompass computer program that identified which loan products could be offered to the customer. SOUF at ¶ 40-41. Next, Plaintiff discussed with customers the terms and conditions of particular loans, trying to match the customers' needs with one of Townstone's loan products. SOUF at ¶ 42. If the customer accepted Townstone's offered interest rate, Plaintiff, like all other Townstone loan officers, could "lock" the loan, thereby allowing the customer to receive the same interest rate when the loan closed a certain number of days later. SOUF at ¶ 45. Plaintiff would compile

2

customer documents for forwarding to an underwriter or loan processor who would finalize the documents for closings. SOUF at ¶ 47.

Defendants required Plaintiff to work in the mornings, evenings, and on weekends, in addition to his time spent in the office each work week. SOUF at ¶¶ 19-22. Plaintiff was paid a low base salary and commissions on the loans he sold. SOUF at ¶ 30. Plaintiff typically worked in Townstone's offices on Monday to Friday and from home in the mornings, evenings, and weekends for an approximate total of 50-60 hours per week. SOUF at ¶¶ 15, 34, 37. Plaintiff never received overtime compensation during his employment at Townstone. SOUF at ¶ 33. In fact, Defendants testified that they never recorded the time worked by their loan officers nor pay them overtime. SOUF at ¶ 54.

## IV.    ARGUMENT

### A.    Legal Standard for Summary Judgment.

Summary judgment is warranted where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The party seeking summary judgment bears the burden of proving to the Court that the pleadings, depositions, answers to interrogatories, and affidavits demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**B.    Plaintiff Did Not Satisfy Any Test For Exemption Under The FLSA or IMWL.**

The FLSA and IMWL require an employer to pay employees at a rate of time and one half the employee's regular rate of pay for all hours worked in excess of 40 per week, unless the employer proves that the employee is exempt under the statute.[1] 29 U.S.C. § 207; 820 ILCS 105/4a. Because exemptions are affirmative defenses, Defendants bear the burden of establishing their application. *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 631 (7th Cir. 2010); *Bankston v. State of Ill.*, 60 F.3d 1249, 1252 (7th Cir. 1995). Exemptions are to be narrowly construed against the employer. *Moreau v. Klevenhagen*, 508 U.S. 22, 33 (1993); *see also Johnson v. Hix Wrecker Service, Inc.*, 651 F.3d 658, 660 (7th Cir. 2011) ("Because the FLSA is a remedial act, exemptions from its coverage are narrowly construed against employers"). Therefore, an employer seeking to apply an FLSA exemption must prove that the employee comes "plainly and unmistakably" within the exemption's terms and spirit. *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 296 (1985), *Barrentine v. Arkansas Best Freight Systems, Inc.*, 450 U.S. 728, 739 (1981), and *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 338, 392 (1960). Defendants claim that Plaintiff satisfies the bona fide administrative employee exemption, the outside salesperson exemption, and the combination exemption. Notwithstanding the fact that Plaintiff logically cannot satisfy all three exemptions at once, Defendants have not proven and cannot prove that Plaintiff satisfies *any* claimed exemption, much less all three.

**1.    Plaintiff Was Not an Outside Sales Employee**

Plaintiff was not an outside salesman at Townstone. An outside salesman is an employee "whose primary duty is making sales...and who is customarily and regularly engaged away from

---

[1] The overtime provisions of the IMWL parallel those of the FLSA, including the circumstances under which an employee is exempt from overtime requirements. *See, e.g., Resurrection v. Shannon*, 2013 IL App (1st) 111605, at ¶ 23.

the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500. "The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home." 29 C.F.R. § 541.502. "A salesperson is exempt if she performs her sales work away from a fixed site (used by the salesperson as a headquarters or for the telephonic solicitation of sales) on a greater than occasional basis." *Wolfram v. PHH Corp.*, No. 1:12-cv-599, 2014 WL 2737990, at *5 (S.D. Ohio June 17, 2014). Here, Plaintiff primarily sold mortgage loans generated by Townstone from their offices or from his home. As much as 95% of these sales were from leads generated by Townstone, primarily through its radio marketing, led by David Hochberg. SOUF at ¶ 8. Because Plaintiff was not meeting with customers at their home or business to sell them mortgages, the outside salesperson exemption does not apply here.

### a. Both Townstone's Offices and Plaintiff's Home Constitute an Employer's Place of Business.

The first step in determining whether Plaintiff fulfills the outside salesperson exemption is determining what constitutes an employer's place of business in accordance with the Federal Regulations. The court in *Wolfram v. PHH Corp.* considered that issue and concluded that both assigned offices and home offices can constitute an employer's place of business. *Wolfram*, 2014 WL 2737990, at *7. There, plaintiffs were employed as loan officers who were assigned to work from one of three real estate offices. *Id.* at *1. In these offices, plaintiffs were provided with a designated desk or communal workspace, keys or badges to gain access to the building, access to conference rooms, and necessary office equipment such as telephones, printers, and copy machines. *Id.* at *5. It was also undisputed that plaintiffs worked from their homes early in the morning, in the evening, and over the weekend. *Id.* at *6. When they worked from home, plaintiffs performed the same activities as they did in their assigned real estate offices:

completing loan applications and calling or emailing clients and real estate agents. *Id*. The court found, as a matter of law, that both the assigned real estate offices and plaintiffs' home offices "were fixed sites and headquarters and therefore constituted an employer's place of business under 29 C.F.R. § 541.502." *Id*. at *7 (internal punctuation omitted). The assigned real estate offices, the court reasoned, operated as the plaintiffs' headquarters for their sales activities. *Id*. at *6. Similarly, because the plaintiffs were "regularly engaged in telephonic sales activities from their home offices," their homes also operated as "'fixed sites' and 'headquarters' and therefore constituted an 'employer's place of business' under 29 C.F.R. § 541.502." *Id*.

The instant case is analogous to *Wolfram*. Plaintiff worked primarily out of Defendants' offices Monday to Friday, where loan officers were provided with a designated cubicle or desk, a key fob to obtain access to the office, and necessary office equipment such as a telephone and computer. SOUF at ¶ 14. In fact, Defendants' Office Manager, Maggie Wong, along with five former Townstone loan officers, testified that all Townstone loan officers, including Plaintiff, primarily worked at Townstone's Chicago office. SOUF at ¶ 15. The Townstone offices functioned as Plaintiff's base for his sales duties where Plaintiff received incoming calls from Townstone leads and communicated with such leads and clients via telephone and email. SOUF at ¶¶ 34, 38. When working from home in the mornings, evenings, and weekends, Plaintiff could and did access his Townstone computer remotely using Townstone's VPN. SOUF at ¶ 16. He was also required to forward incoming phone calls to his office phone line to his cell phone when away from work. Silver performed the same tasks when working from home as he did while working in Townstone's offices, such as calling and emailing clients, assisting them in filling out loan applications, and following up with leads assigned to him by Hochberg or Sturner. SOUF at ¶¶ 16, 35. Because Plaintiff performed his telephonic sales activities from these fixed sites,

6

which operated as his base or headquarters, both Townstone's offices and Plaintiff's home office constitute an employer's place of business as a matter of law.

> **b.** **Plaintiff Sold Loans to Townstone-Generated Leads from Townstone's Offices.**

Plaintiff does not satisfy the second prong of the outside sales exemption because he did not "customarily and regularly" engage in exempt sales activity away from the Townstone offices. In determining the "customarily and regularly engaged" element, courts have concluded that "the pertinent inquiry is whether the employee performs tasks critical to sales away from the office on a greater than occasional basis." *Dixon v. Prospect Mortg., LLC*, 11 F. Supp. 3d 605, 610 (E.D. Va. 2014).

This case is analogous to *Chao v. First Nat. Lending Corp.*, 516 F. Supp. 2d 895 (N.D. Ohio 2006). In *Chao*, all of the plaintiff's witnesses testified that they rarely met a customer outside the office. *Id*. at 901. Each witness also testified that most of their work was done from the office or from their own homes using telephone and fax communications. *Id*. Although one defense witness testified that loan officers were often not present in the office, she had no knowledge of what they did outside the office and was unable to establish whether they were working on sales when they were absent. *Id*. The court concluded that the defendants "failed to meet their burden of proving that [their] loan officers were customarily and regularly engaged in outside sales." *Id*. Therefore, the outside sales exemption did not apply. *Id*.

Here, as in *Chao*, "the great bulk of the evidence presented in this case indicates that the loan officers in this particular office were not customarily and regularly engaged in their work activities away from [defendant's] place of business." *Id*. at 901. Townstone loan officers, including Plaintiff, worked in Townstone's office Monday through Friday during normal business hours. SOUF at ¶ 34. When Plaintiff worked outside of the Townstone offices during

7

the mornings, evenings, and on weekends, he primarily worked from his home, performing the same sales tasks as he did inside the Townstone offices. SOUF at ¶ 35. This is verified by more than 1,000 emails demonstrating that Plaintiff worked not only during normal business hours, but also after business hours and on weekends, communicating with clients and leads via email and his personal cell phone. SOUF at ¶ 13. Here, just as in *Chao*, Defendants have failed to prove that Plaintiff was customarily and regularly engaged in exempt sales activity away from Defendants' place of business. Accordingly, Plaintiff does not meet the outside sales exemption.

### 2.       Plaintiff Was Not a Bona Fide Administrative Employee.

Defendants' assertion that Plaintiff fits within the administrative exemption is unfounded. Pursuant to section 213 of the FLSA, an employee employed in a bona fide administrative capacity is exempt from the overtime provisions of the FLSA. *See* 29 U.S.C. § 213(a). An employee qualifies as employed in a bona fide administrative capacity if (1) he is compensated on a salary or fee basis at a rate not less than $455 per week; (2) his primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; **and** (3) if his primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a). [emphasis added]

Here, Plaintiff clearly did not meet the requirements of the FLSA administrative exemption. Throughout Plaintiff's employment with Townstone, he did not perform work directly relating to the management or general business operations of Townstone or its customers because his primary duty was sales. Additionally, Plaintiff's position as a loan officer at Townstone did not permit him to exercise discretion or independent judgment.

### a.       Plaintiff's primary duty was sales.

An employee's primary duty is defined as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). In order for Plaintiff to be exempt, his primary duty must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). Work is directly related to the management or general business operations of the employer if it is "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). This type of work includes accounting, budgeting, quality control, purchasing, advertising, human resources, and labor relations. 29 C.F.R. § 541.201(b).

The Department of Labor has opined "that employees who perform the typical job duties of a mortgage loan officer…do not qualify as bona fide administrative employees exempt under section 13(a)(1) of the [FLSA]." Ex. GG, U.S. Dept. of Labor WHD, Admin. Interp. No. 2010-1 (Mar. 24, 2010), at 1. In reaching that conclusion, the Administrator examined the distinction between "servicing the business and routine sales work." Ex. GG at 4. "The regulations implementing the section 13(a)(1) exemption for 'outside' sales employees[2] identify some of the factors that should be considered in determining whether an employee's primary duty is making sales." *Id.* These factors include "the employee's job description; the employer's qualifications for hire; sales training; method of payment; and proportion of earnings directly attributable to sales." *Id.*, *see also* 29 C.F.R. § 541.504(b); *Olivo v. GMAC Mortgage Corp.*, 374 F. Supp. 2d 545, 550 (E.D. Mich. 2004) (relevant factors are whether employee solicits customers, receives

---

[2] As explained below, Plaintiff was not an outside sales loan officer. However, the Administrator noted that though its interpretation "applies to employees who spend the majority of their time working inside their employer's place of business…, because many of the duties of all mortgage loan officers are similar, cases arising in these other contexts are referred to for guidance and cited in this interpretation." Ex. GG at 1, n. 1.

sales training, is compensated by commission, and is labeled as a salesman). Relying upon these factors, courts have consistently found that loan officers' primary duty is sales. *See Wong v. HSBC Mortg. Corp. (USA)*, 749 F. Supp. 2d 1009, 1014 (N.D. Cal. 2010) ("plaintiffs' [loan officers] primary duty is selling financial products") (internal punctuation omitted); *Hartman v. Prospect Mortg., LLC*, 11 F. Supp. 3d 597, 602 (E.D. Va. 2014) (where plaintiff's pleadings, deposition testimony, and job description stated that her job was to sell mortgages, "[t]he record amply demonstrates that Plaintiff's primary duty was to make sales"); *Chao v. First Nat. Lending Corp.*, 516 F. Supp. 2d 895, 901 (N.D. Ohio 2006) ("There is no question that the primary purpose of loan officers employed by [defendant] is to make sales").

Plaintiff's employment agreement, sworn testimony, payment history, testimony of other former Townstone loan officers, and Sturner and Hochberg's own deposition testimony confirm that Plaintiff's primary duty as a Townstone loan officer was sales. Other former Townstone loan officers confirmed Plaintiff's testimony when they each testified that their primary duty as a Townstone loan officer was to sell loans. SOUF at ¶ 37. Each former Townstone loan officer also confirmed that they were not involved in the management or business operations at Townstone. SOUF at ¶¶ 47-49, 51. Most notably, deposition testimony of both Sturner and Hochberg confirms that Plaintiff's primary duty was sales, not accounting, hiring or firing, supervising, dealing with vendors, human resources, selecting software, or setting policies on behalf of Townstone Financial. SOUF at ¶ 47. Sturner was "responsible for anything that…would be related to the operations of Townstone." SOUF at ¶ 47. In other words, Sturner, occasionally along with Hochberg, handled the accounting, budgeting, human resources, hiring, firing, and disciplining of staff, purchasing, and advertising at Townstone. SOUF at ¶ 47.

Further, "in determining whether an employee's primary duty is making sales, the work performed incidental to sales should also be considered sales work." Ex. GG at 4. When mortgage loan officers collect and analyze a customer's financial information, they "are *screening* for the benefit of the employer, rather than *servicing* for the benefit of the customer." *Pontius v. Delta Financial Corp.*, No. 04-1737, 2007 WL 1497792, at *9 fn. 20 (W.D. Pa. Mar. 20, 2007) (emphasis in original). Therefore, when Plaintiff collected customer information to determine what loan he could offer to sell, he was not performing an administrative function for Townstone or the customer. Instead, Plaintiff was performing a duty incidental to his ultimate goal of selling one of Defendants' loan products to the customer.

Moreover, Defendants compensated Plaintiff primarily by commissions with a low base salary. SOUF at ¶ 30. "Such payment methods support the conclusion that a mortgage loan officer's primary duty is sales." Ex. GG at 4. Additionally, loan officers' performance at Townstone, including Plaintiff's, was evaluated based upon the number of loans he sold in a given time period. SOUF at ¶ 31. "These factors also support the conclusion that a mortgage loan officer's primary duty is making sales." Ex. GG at 5; *see also Pontius*, 2007 WL 1496692, at *2 (loan officers are "successful in their positions on the basis of their sales performance").

Plaintiff's primary duty of sales was also not directly related to the management or general business operations of Townstone's customers. "[E]mployees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt." 29 C.F.R. § 541.201(c). However, this exemption "does not apply when the individual's business is purely personal." 69 Fed. Reg. 22122-01 (Apr. 23, 2004). "Thus, work for an employer's customers does not qualify for the administrative exemption

where the customers are individuals seeking advice for their personal needs, such as people seeking mortgages for their homes." Ex. GG at 6.

Townstone sold mortgage loans to individuals and families interested in purchasing a home. SOUF at ¶ 6. Plaintiff received potential clients, or "leads," from Defendants and conferred with these individuals to sell home mortgage loans. SOUF at ¶¶ 8-9. Plaintiff did not sell mortgages to businesses, nor did he partake in any type of financial advising or consulting; rather, he would use relevant financial information to assist the customer in completing their loan application and to determine which Townstone loan products he could offer the client. SOUF at ¶¶ 38-40. Therefore, because Plaintiff's primary duty was not related to the management or general business operations of Townstone or its customers, Defendants cannot claim Plaintiff was exempt under the administrative exemption.

Finally, Defendants' own affirmative defense, that Plaintiff is exempt under the outside sales exemption, is an admission that Plaintiff's primary duty was sales. "[M]any employers defending against FLSA lawsuits brought by mortgage loan officers argue that the employees are exempt under section 13(a)(1) as outside sales employees." Ex. GG at 5. Therefore, "the employer concedes [the employee's] primary duty is sales (a required element of exemption)." *Id*. Indeed, Defendants claim here that Plaintiff was an outside sales employee. Dkt. No. 30 at ¶¶ 19. In doing so, Defendants must admit that Plaintiff's primary duty is sales, thus eliminating the possibility that he qualifies for the administrative exemption.

### b. Plaintiff Did Not Exercise Discretion or Independent Judgment.

The third prong of the administrative exemption mandates that an employee's "primary duty include the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). "In general, the exercise of discretion and independent

judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). The Court must consider several factors to determine whether an employee exercises discretion and independent judgment, including:

> whether the employee <u>has authority to formulate, affect, interpret, or implement management policies or operating practices</u>; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has <u>authority to waive or deviate from established policies and procedures without prior approval</u>; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee <u>provides consultation or expert advice to management</u>; whether the employee is involved in <u>planning long- or short-term business objectives</u>; whether the employee <u>investigates and resolves</u> matters of significance <u>on behalf of management</u>; and whether the employee <u>represents the company</u> in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b) (emphasis added). "The regulations also caution against confusing true discretion and independent judgment with the use of skill in applying techniques, procedures, or specific standards." *Roe-Midgett v. CC Services, Inc.*, 512 F.3d 865, 873 (7th Cir. 2008) (internal punctuation omitted); *see also* 29 C.F.R. § 541.202(e) ("The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures, or specific standards described in manuals or other sources"); *Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 687-88 (6th Cir. 2001) (affirming lower court's finding that employees did not exercise discretion or independent judgment when they followed strict procedures and protocols that controlled nearly everything they did). "Employees…who grade, classify, or otherwise determine whether specified standards are met are not exercising discretion or

independent judgment for the purposes of the administrative exemption." *Roe-Midgett*, 512 F.3d at 873.

"To determine whether an employee, constrained by guidelines and procedures, actually exercises any discretion or independent judgment…a court must consider whether those guidelines and procedures contemplate independent judgment calls or allow for deviations." *Lutz v. Huntington Bancshares, Inc.*, No. 2:12-cv-01091, 2014 WL 2890170, at *16 (S.D. Ohio June 25, 2014), *quoting Renfro v. Ind. Mich. Power Co.*, 497 F.3d 573, 577 (6th Cir. 2007) (internal punctuation omitted). "[E]mployees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the *correct response* to an inquiry or set of circumstances do not exercise discretion and independent judgment within the meaning of § 541.200(a)(3). *Id.* (emphasis in original), *citing* 29 C.F.R. § 541.704.

Townstone loan officers did not have authority to formulate, affect, interpret, or implement management policies or operating practices at Townstone. SOUF at ¶¶ 25, 48. Only Defendants had the authority to create or implement new policies or practices at Townstone. SOUF at ¶¶ 17-18. Further, Plaintiff and other loan officers lacked the authority to waiver or deviate from Townstone policies or procedures, either those contained in the employee handbook or those informally communicated to them by Sturner or Hochberg. SOUF at ¶ 24. In fact, Townstone loan officers did not even have the discretion or authority to determine the order in which loan papers and customer documents were organized before sending to Townstone's loan processing department. SOUF at ¶ 23.

As discussed above, Plaintiff applied well-established Townstone policies and procedures when deciding which loan product to offer to a customer. Plaintiff did not analyze customers'

14

financial information and pick a product based on his own judgment. SOUF at ¶¶ 38-39. Rather, he took the results provided by Townstone's loan software program, Encompass, and discussed them with the customer. SOUF at ¶¶39-40. Plaintiff also lacked discretion with respect to choosing an interest rate for a given customer. Interest rates are set, first and foremost, by the institutional investor to whom Townstone would sell its loans. SOUF at ¶ 41. Within the range of rates that the institutional lender would accept, Townstone instituted its own range of acceptable rates to turn a profit on each loan. SOUF at ¶ 42. Accordingly, Plaintiff did not exercise discretion and independent judgment with respect to matters of significance.

### 3.  Plaintiff is Not Exempt Under the Combination Exemption

Defendants, scrambling for an applicable exemption when there is none, finally resort to the combination exemption, presumably claiming that when Plaintiff was not fulfilling his primary duty of outside sales, he was performing exempt administrative duties. "Employees who perform a combination of exempt duties…for executive, administrative, professional, outside sales and computer employees may qualify for exemption." 29 C.F.R. § 541.708. "By its terms, the combination exemption regulation focuses solely on the employee's job duties." *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 293 (4th Cir. 2007). The combination exemption provides "an alternative method for satisfying the primary duty test, without abrogating the other requirements needed for the exemption to attach." *Id.* at 293-94. "Thus, an employee performing duties that fall under more than one individual exemption, none of which *separately represents* her primary duty, may be exempt under the combination exemption if those duties, when combined, constitute her primary duty." *Id.* at 294. (emphasis added). The combination exemption "cannot apply to an employee with administrative job functions constituting part of her 'primary duty' unless the employee also meets the administrative exemption's salary requirement." *Id.*

15

This case is distinguishable from *Schmidt v. Eagle Waste Recycling, Inc.*, 599 F.3d 626 (7th Cir. 2010). In *Schmidt*, the plaintiff worked as an outside salesperson at a waste removal company. *Id*. at 629. Her duties included contacting potential commercial customers at their places of business and convincing them to choose defendant for their waste removal needs. *Id*. Plaintiff also had promotional and marketing duties, such as conferring with her supervisor, defendant's president, to determine new locations and businesses to target. *Id*. "When [plaintiff] was not actively pursuing sales, she developed advertising and marketing plans for the company, managed customer complaints, administered the customer database, and dealt with issues that would have been handled by [defendant's president] had he been in the office, such as approving an order of parts for broken machinery." *Id*. at 632. Upon review, the Seventh Circuit concluded that "to the extent [plaintiff's] work was not related to outside sales, it was primarily exempt administrative work." *Id*. Therefore, the Seventh Circuit concluded that "the combination of [plaintiff's] outside sales and administrative work exempts her from the FLSA's overtime requirements." *Id*. at 633.

Here, on the other hand, Plaintiff was not engaged in outside sales or any exempt administrative duties. As explained above, Plaintiff did not customarily and regularly perform his sales duties away from Townstone's place of business. *See* § IV.B.1, *supra*. Furthermore, unlike the plaintiff in *Schmidt*, Plaintiff did not play any part in developing advertising or marketing plans for Townstone, nor did he manage customer complaints or deal with any management or operations issues normally handled by Sturner and Hochberg. SOUF at ¶¶ 47-50. Because Plaintiff performed neither outside sales duties nor exempt administrative duties, Defendants have not and cannot meet their burden of proving that the combination exemption

applies. Accordingly, this Court must grant Plaintiff's Motion with respect to the combination exemption.

### B. Unlawful Retaliation

Section 215(a)(3) of the FLSA makes it unlawful for an employer to discharge or otherwise discriminate an employee for filing a complaint or instituting a proceeding under or related to the FLSA. 29 U.S.C. § 215(a)(3). "When the immediate cause or motivating factor of a discharge is the employee's assertion of statutory rights, the discharge is discriminatory under § 215(a)(3) whether or not other grounds for discharge exist." *Wilke v. Salamone*, 404 F. Supp. 2d 1040, 1048 (N.D. Ill. 2005). To establish a *prima facie* case for retaliatory discharge under the direct method of proof, Plaintiff must demonstrate that he was engaged in statutorily protected expression; he suffered an adverse action by his employer; and there is a causal link between the protected expression and the adverse action. *See Larsen v. Club Corp. of America*, 855 F. Supp. 247, 253 (N.D. Ill. 1994), *Rennie v. Dalton*, 3 F.3d 1100, 1109 (7th Cir. 1993). It is indisputable that Plaintiff suffered an adverse action by his employer when he was terminated on February 6, 2014. Therefore, Plaintiff must prove only that he was engaged in statutorily protected expression and that there is a causal link between his expression and his firing from Townstone.

### 1. Plaintiff Was Engaged in Statutorily Protected Expression when he Complained about Unpaid Overtime.

The FLSA protects employees who make any complaint under the act, whether that complaint is oral or written. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 17 (2011); *see also* 29 U.S.C. § 215(a)(3). Because Congress intended the FLSA to offer broad protections, employees are not required to assert statutory specifics when making a complaint in order to be shielded from retaliation. *Shadduck v. United Parcel Service, Inc.*, No. 10 C 2203, 2011 WL 4452210, at *2 (N.D. Ill. Sept. 26, 2011). Courts only require that "a complaint must

be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten*, 563 U.S. at 14.

"A refusal to work for free is an assertion of one's right to compensation under the [FLSA] – and, thus, a complaint 'filed' within the meaning of the Act." *O'Donnell v. America At Home Healthcare and Nursing Services, Ltd.*, No. 12 CV 6762, 2015 WL 684544, at *5 (N.D. Ill. Feb. 17, 2015) (citation omitted). Here, Plaintiff complained to Sturner, Hochberg, and other Townstone employees about working too many hours without adequate compensation. SOUF at ¶ 56. On the day Plaintiff was fired, it is undisputed that he complained to Sturner via email about working all hours of the day and night when his office line is forwarded to his personal cell phone. SOUF at ¶ 57. Plaintiff's complaints about working too many hours without adequate compensation and about incurring business charges to his personal cell phone were sufficiently clear and detailed for Defendants to understand that he was complaining about his right to overtime compensation. Therefore, Plaintiff engaged in statutorily protected expressions and satisfies the first prong of the test.

## 2. A Causal Link Exists Between Plaintiff's Protected Expression and Termination

To demonstrate a causal link between his protected expression and his firing, Plaintiff must show that Defendants would not have fired him but for his protected activity. *O'Donnell*, 2015 WL 684544, at *7. Plaintiff can prove "but for" causation in two ways: by presenting direct or circumstantial evidence. *Id.; see also Cichon v. Exelon Generation Co, LLC*, 401 F.3d 803, 810 (7th Cir. 2005). Circumstantial evidence "permits a reasonable juror to infer retaliation." *Id.* The Seventh Circuit has identified three types of circumstantial evidence. *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). The most common type of circumstantial evidence

18

is "ambiguous statements, suspicious timing, discrimination against other employees, and other pieces of evidence not conclusive in itself but together composing a convincing mosaic." *Id*. The second type is evidence that similarly situated employees were treated better than Plaintiff. *Id*. The third type is evidence demonstrating that the employer's stated reason for firing is mere pretext. *Id*. "Each type of evidence can be sufficient by itself…or the types can be used in combination, as long as the evidence points directly to a discriminatory reason for the employer's action." *Skelton v. American Intercontinental University Online*, 382 F. Supp. 2d 1068, 1076-77 (N.D. Ill. 2005), *quoting Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003) (internal punctuation omitted).

Defendants themselves have presented all three types of circumstantial evidence. First, emails exchanged between Plaintiff and Sturner demonstrate that Plaintiff was fired on the same evening he complained about working all hours of the day and night and about unlawful business charges to his personal cell phone. SOUF at ¶¶ 59-61. Second, five former Townstone loan officers testified that they also worked overtime for which they were not compensated. SOUF at ¶ 27. However, Plaintiff's former coworkers didn't complain to Sturner and Hochberg about their pay while working at Townstone. Likewise, none of Plaintiff's former coworkers were fired from Townstone. Finally, Defendants' inconsistent and ever-changing stated reasons for Plaintiff's firing are clearly pre-textual. In their affirmative defenses interrogatory responses, and supplemental interrogatory responses, Defendants stated ***nine*** different reasons for Plaintiff's firing. *See* Dkt. No. 30 at ¶ 2 (Plaintiff "came late, left early, harassed other employees and failed to obtain certain compliance certification[s] necessary for his position with Townstone"), Ex. CC at ¶ 16 ("Plaintiff was terminated because of his chronic absenteeism. Plaintiff came late, left early, and refused to speak with customers at nights or on weekends. In addition, Plaintiff

harassed at least one female employee, and made comments regarding the sexual orientation of at least one other Townstone employee, and was generally difficult to work with and was disruptive in the workplace"), Ex. FF at ¶ 16 ("Plaintiff was terminated because Plaintiff failed to follow Townstone's policies regarding compliance with state and federal laws"). At his deposition, Sturner changed his answer regarding why Plaintiff was fired three different times. SOUF at ¶ 65. Upon further questioning, neither Sturner nor Hochberg were able to specify which reason was the true reason for his termination, nor were they able to establish how or why they reached the conclusion to fire Plaintiff. SOUF at ¶¶ 65-66. In fact, Defendants were unable to produce evidence of a single disciplinary action taken toward Plaintiff prior to his termination, a clear violation of Townstone's own corrective action policy. SOUF at ¶¶ 68-69. Each of these pieces of evidence, when viewed together, points directly to the fact that Plaintiff was fired for complaining about working unpaid overtime and for accruing unlawful business charges to his personal cell phone. Accordingly, Plaintiff respectfully requests that this Court grant Plaintiff's motion for summary judgment that Defendants retaliated against him by terminating his employment when he complained about unpaid overtime.

## V.   <u>CONCLUSION</u>

For all the above reasons, Defendants have not satisfied their burden to prove that Plaintiff was exempt. Rather the evidentiary record proves that Plaintiff's primary duty was inside sales, that he was misclassified as exempt and denied overtime. This same record also plainly establishes that Plaintiff was fired in direct retaliation the same day he complained about unpaid wages. Accordingly, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Summary Judgment on Liability and set this matter for trial to prove up his damages.

Date:   March 28, 2016                          Respectfully Submitted,

                                                */s/ Ryan F. Stephan*
                                                Ryan F. Stephan
                                                STEPHAN ZOURAS, LLP
                                                205 N. Michigan Avenue, Suite 2560
                                                Chicago, Illinois 60601
                                                (312) 233-1550
                                                (312) 233-1560 f
                                                rstephan@stephanzouras.com

                                                **ATTORNEYS FOR PLAINTIFF**