IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON SILVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 14-cv-1938 |
| v. | ) |
| | ) |
| TOWNSTONE FINANCIAL, INC., et al, | ) Hon. Sharon Johnson Coleman |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND II**

Plaintiff Jason Silver ("Plaintiff") worked for approximately 20 months as a loan officer for mortgage banker/Defendant Townstone Financial, Inc. ("Townstone"). There, he earned an annualized salary, plus commissions of well in excess of $100,000. Despite making approximately $120,000 per year, Plaintiff wants more and asserts that he is owed overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").[1]

The undisputed facts, however, show that Plaintiff was an exempt employee under the FLSA and, therefore, is not entitled to overtime pay. Specifically, Plaintiff is exempt because Plaintiff (1) was paid a salary of more than $445 per week, (2) was paid more than $100,000 per year in salary and commissions, and (3) regularly exercised "discretion and independent judgment with respect to matters of significance."

In fact, Plaintiff conceded during his deposition in this case that on a "daily" basis, among other things, he:

---

[1] In Count I, Plaintiff asserts that Townstone failed to pay overtime compensation to Plaintiff in violation of the FLSA. Plaintiff asserts in Count II that the same conduct violated the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL"). Claims brought under the FLSA and IMWL are evaluated using the same general analysis, *Knapp v. City of Markham*, No. 10-C-03450, 2011 WL 3489788, *8 (N.D. Ill. Aug. 9, 2011); 56 Ill. Admin. Code 210.120 (2009).

- Analyzed customer's information and exercised his discretion to suggest loan products and strategies;

- Committed Townstone to make loans to borrowers at interest rates that he selected. In other words, Plaintiff determined whom to sell loans to, and set the price of, the loans, thus determining *the precise amount of profit* Townstone made on each loan he sold or brokered; and

- Had authority to lock loans with investors on the secondary market.

In sum, Plaintiff is exempt because he earned more than $100,000 a year and exercised discretion to "determine the interest rate" and "determine the total profitability of [] loan[s]."

But if there is even a scintilla of doubt that Plaintiff was exempt for this basis, Plaintiff also was exempt because he (1) was paid more than $100,000 per year and regularly performed work relating to the general business operations of Townstone and its customers and (2) was an outside salesperson. *See* 29 CFR §§ 541.201, 541.500. As demonstrated below, there is a panoply of exemptions from which the Court can that Plaintiff was an exempt employee and thus has no right to any additional sums from Defendants. Therefore, the Court should enter judgment in favor of Defendants on Counts I and II of Plaintiff's Complaint.[2]

## BACKGROUND FACTS

**I.   Townstone's Business**

Townstone is a mortgage banker. Townstone offers its borrowers a wide variety of products, such as 30-year and 15-year fixed-rate mortgages, or 7-year and 10-year adjustable-rate mortgages. After each loan closes, Townstone immediately sells the loan to institutional investors (like Chase Bank and Fifth Third Bank) in the secondary market. (Defendants' Local Rule 56.1 Statement of Material Facts (cited herein as "DSMF ¶ __" ) at ¶ 6.)

---

[2] Defendants asserted as affirmative defenses that Plaintiff was an exempt employee. (Dkt. 30.)

The interest rate Townstone charges its customers is determined by the range of prices institutional lenders are willing to pay Townstone for its closed loans. That is, on a regular basis, each investor publishes rate sheets stating how much it will pay lenders such as Townstone for particular types of loans at particular interest rates. Thus, before Townstone sells a loan, Townstone can choose from a range of rates offered by the institutional investor and then offer any one of those rates to the customer. For example, in May 2013, Townstone's loan officers could sell a 30-year fixed mortgage loan with an interest rate of 3.65%, 3.75%, 3.875%, or higher or lower. Generally speaking, the greater the interest rate, the more money that Townstone will make. (*Id.* ¶¶ 7, 9, 21.)

Once Townstone agrees to make a loan to a customer, it then "locks" the loan with the particular investor to whom it will sell the loan after closing, usually for a period of time between 30 and 90 days. Once a loan is "locked," the investor agrees to pay a set amount to Townstone for the loan even if interest rates go up during the lock period. In general, because interest rates fluctuate over time, a shorter the lock period will generate a greater fee for Townstone. Conversely, the longer the lock period, the less the investor will pay to Townstone. Thus, the lock period, interest rate, and what costs Townstone agrees to pay on behalf of the borrower determines Townstone's profit on any given loan. (*Id.* ¶ 8, 10, 19.)

There are financial risks associated with locking a loan. If a loan does not close for any reason, including because the loan officer chooses too short of a lock period, or the loan officer approves a loan that does not comply with the investor's loan guidelines, then Townstone could be liable for fees to the investor that agreed to purchase the loan. These unclosed loans are called "fall out." If too many loans "fall out," then the investor will discontinue doing business with Townstone. Finally, if Townstone commits to make a loan to a customer at a particular

interest rate, but waits too long to lock a loan with an investor, it runs the risk that interest rates will increase such that Townstone could be forced to service the loan itself or sell it at a loss. (*Id*. ¶¶ 11-12.)

## II.     **Plaintiff's Duties and Responsibilities as a Loan Officer at Townstone.**

### A.     **Plaintiff's Regularly Exercised Discretion**

#### 1.     Plaintiff Exercised Discretion in Advising Customers.

Plaintiff was employed as a loan officer by Townstone from May 24, 2012, until he was terminated on February 6, 2014. (*Id*. ¶ 1.)  Plaintiff, like all other loan officers at Townstone, interfaced with consumers seeking a home mortgage.  For each prospective customer, Plaintiff had to analyze the prospective borrower's credit, capacity to make payments, and the value of the collateral securing the loan. To do so, Plaintiff gathered information relating to a prospective borrower's finances.  Plaintiff then researched interest rates, pulled the borrower's credit report, and researched the value of the property the potential borrower was seeking to buy, among other things. On a near daily basis, Plaintiff advised potential borrowers as to the best fit for their financial needs by explaining the "pros and cons" of various loan products.  Plaintiff would "build individual financial planning systems for clients," which included advising customers on fixing poor credit and employing sound savings strategies.  Plaintiff characterized this "daily hand holding" of Townstone's customers as essential "to make sure they are making the best informed decision" about which loan product to select.  (*Id*. ¶¶ 14-16.)

#### 2.     Plaintiff Exercised Discretion to Quote Interest Rates to Customers.

While Plaintiff suggests that he was required to quote an interest rate that would yield Townstone a 2% return on the face value of the loan,[3] Plaintiff admitted that he had the

---

[3] In truth, Townstone loan officers, including Plaintiff, were authorized to sell loans with interest rates so low that Townstone would lose money if it meant referrals for additional business down the road. (DSMF ¶ 22.)

discretion to quote *higher* interest rates to customers so that Townstone could earn more money. (*Id*. ¶¶ 19-26.) The other Townstone loan officers confirmed that Plaintiff had this discretion:

> So we saw raw pricing. We handled pricing, **we were able to make judgments**. We're not in the industry standard bucket system in compensation where your rates that you are given come from secondary marketing; we are secondary marketing … **You determine the total profitability of the loan**.

(*Id*. ¶ 30; emphasis added; *see also id.* ¶ 23.)

### 3. Plaintiff Exercised Discretion to Lock Loans.

After analyzing a potential borrower's credit, capacity, and value of the collateral, Plaintiff had discretion to bind Townstone to make a loan to the borrower at the interest rate selected solely by Plaintiff from a range of rates offered in the secondary market. Plaintiff then had the authority to "lock" the sale of that loan to an investor on the secondary market. Plaintiff had the discretion to determine: (a) when to "lock" the loan; (b) what investor to lock the loan with; and (c) the length of time in which the loan was locked. (*Id*. ¶¶ 27-31.) As noted above, each of these discretionary acts set the profit that Townstone would earn on a loan, and also put Townstone at risk of loss if not performed correctly. (*Id*. ¶¶ 11, 12, 30.)

Plaintiff admitted that if he failed to properly exercise this discretion and the loan did not close within the lock period, then "Townstone might have to purchase the loan itself," something that "obviously … wouldn't be conducive to business" because Townstone could be liable for fees to the investor and forced to service the loan itself. (*Id*. ¶ 31.) In addition, as noted above, if enough loans "fall out" from a particular investor, then the investor would discontinue doing business with Townstone, and making Townstone less competitive in the marketplace. (*Id*. ¶ 11.)

### 4. Plaintiff Exercised Discretion to "Float Down" Rates.

---

Nevertheless, Plaintiff still cannot create an issue of fact here to avoid summary judgment because Plaintiff concedes he had the authority to determine the precise amount of profit Townstone would make. (*Id*. ¶¶ 25-26.)

5

Plaintiff also had the authority to "float down" the interest rate charged to borrowers in situations where interest rates went down after the customer's loan was locked. In fact, even if a customer never asked Plaintiff to obtain a lower rate after a lock, Plaintiff admitted that he still tried to obtain one on his own because "[t]here is always a chance that a customer is going to find a rate somewhere else and walk. So it is only beneficial to the business of Townstone that they keep the customer happy." (*Id.* ¶ 32.)

### III. Plaintiff's Work Relating to Townstone's General Business Operations.

In addition to Plaintiff's regular exercise of discretion and independent judgment, Plaintiff customarily and regularly performed work related directly to the management or general business operations of Townstone and its customers. (*Id.* ¶¶ 33-40.)

#### A. Analyzing Credit and Advising Customers.

As discussed above, Plaintiff collected and analyzed customers' finances and then advised customers on the best course to choose in selecting a loan product. Again, Plaintiff described this work as "daily hand holding" to make sure customers made the best informed decision in choosing which loan to purchase. *See* § II.A.1, *supra*.

#### B. Marketing.

Townstone also required its loan officers (including Plaintiff) to prepare a marketing plan and engage in marketing activities. Pursuant to Plaintiff's 2014 marketing plan, Plaintiff agreed to, among other things, identify 5-10 additional real estate brokers who could refer him more business by attending broker open houses and directly visiting real estate brokerages *every* Tuesday and *every other* Sunday. (*Id.* ¶ 31) In addition, Plaintiff admitted that he regularly attended seminars, worked at Townstone's weekly radio program, sent out flyers, met with his own referral sources, attended real estate brokers' open houses, and attended closings for the

purpose of marketing persons at the title companies. Plaintiff's emails further demonstrate these regular marketing activities. (*Id.* ¶¶ 34-39)

### C. Secondary Market Interest Rate Research.

Plaintiff also regularly performed research concerning interest rates in the secondary marketplace. As explained above, Townstone sold the loans it originated to investors in the secondary market. To maximize its profits, all Townstone loan officers were required to research which investors in the secondary market provided the best rates and yielded the greatest profit to Townstone. (*Id.* ¶ 40.)

## IV. Plaintiff Customarily and Regularly Performed Outside Sales.

Finally, Plaintiff also engaged in sales activity away from Townstone's offices.[4] Plaintiff admitted that he visited clients at their place of business "approximately once a week to pick up financial documents necessary to complete the loan application process and/or obtain client signatures on required documents." In addition, as noted above, Plaintiff also met with potential customers and referral sources outside of Townstone's offices. Consistent with his outside work, of the 143 loans that Plaintiff closed during his tenure with Townstone, 48 were from Plaintiff's own leads (*i.e.*, his outside sales). (*Id.* ¶¶ 41-43.)

## V. Plaintiff Was Paid More Than $100,000 Per Year.

Plaintiff was highly compensated in exchange for the work he performed. At all times during his employment, Townstone paid Plaintiff a regular salary of no less than $455 per week,

---

[4] Plaintiff acknowledged he would perform his job away from Townstone's place of business in his Employment Agreement. (DSMF ¶ 41.)

plus contractual commissions. In total, Townstone paid Plaintiff more than $100,000 per year on an anniversary-anniversary basis in salary, plus non-discretionary commissions.[5] (*Id*. ¶¶ 44-47.)

## ARGUMENT

### I.  Standard for Summary Judgment

A movant is entitled to summary judgment if it shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Although the facts will be reviewed in the light most favorable to the non-moving party (*Kellar v. Summit Seating Inc.,* 664 F.3d 169, 173 (7th Cir.2011)), the "mere existence of a scintilla of evidence in support of the [non-movant's] position" is insufficient to defeat a motion for summary judgment, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). "The nonmoving party must offer more than '[c]onclusory allegations, unsupported by specific facts' in order to establish a genuine issue of material fact." *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003). Moreover, "uncorroborated, self-serving testimony cannot support a claim if the testimony is based on 'speculation, intuition, or rumor' or is 'inherently implausible.'" *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009).

Here, there is no genuine issue of material fact regarding Plaintiff's duties and responsibilities at Townstone. The only dispute involves the parties' *characterization* of those duties. *Hein v. PNC Fin. Servs. Grp., Inc.*, 511 F. Supp. 2d 563, 572 (E.D. Pa. 2007) (granting summary judgment to employer where, as here, "[t]he parties have not disputed Plaintiff's actual

---

[5] An employer may utilize any 52-week period as the year, such as a calendar year, a fiscal year, or an anniversary of hire year. 29 CFR § 541.601(b)(4). Moreover, an employee who does not work a full year due to termination before the end of the year still qualifies as a highly compensated employee if the employee receives more than $100,000 on a *pro rata* basis. *Id.*; §  541.601(b)(3). Here, Defendants utilize the anniversary year to calculate Plaintiff's total annual compensation. (DSMF ¶¶ 44-47.)

duties, only the characterization of those duties."). Accordingly, as set forth below, Defendants are entitled to summary judgment on Counts I and II of Plaintiff's Complaint.

## II. The Administrative Employee Exception as Applied to Highly Compensated Employees

An employer is not obligated to pay overtime wages to an employee "employed in a bona fide executive, administrative, or professional capacity … or in the capacity of outside salesman … " 29 USC 213 (a)(1). The Federal Regulations further provides that in circumstances where the employee makes *less than* $100,000 an employee qualifies as an exempt administrative employee if three requirements are met:

(1) the employee must be compensated on a salary or fee basis at a rate not less than $455 per week;

(2) the employee's primary duty must be 'the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers'; and

(3) the employee's primary duty must include 'the exercise of discretion and independent judgment with respect to matters of significance.'

29 C.F.R. § 541.200. When the employee earns greater than $100,000 per year, however, the standard for determining whether the employee qualifies as exempt under the administrative exemption is relaxed.[6] Specifically, "an employer need only establish that such an employee '*regularly* performs any one or more of the exempt duties or responsibilities' of a bona fide administrative employee. Consequently, for highly compensated employees, an employer need

---

[6] *See* 29 CFR § 541.601(c) ("A high level of compensation is a strong indicator of an employee's exempt status, ***thus eliminating the need for a detailed analysis of the employee's job duties*** . Thus, a highly compensated employee will qualify for exemption if the employee ***customarily and regularly*** performs *any **one*** or more of the exempt duties or responsibilities of an executive, administrative or professional employee[.]") § 541.601(c)) (emphasis added). *See also In re RBC Dain Rauscher Overtime Litig.*, 703 F. Supp. 2d 910, 943 (D. Minn. 2010) (holding that the analysis of an employee's primary duties ***is not relevant*** to a court's determination whether a highly compensated employee qualifies for the administrative exemption because a highly compensated employee "would qualify for the exemption even if his or her primary duty was to perform nonexempt work … so long as the employee **also** 'normally and recurrently' performed ***at least one*** of the exempt duties of an administrative employee.") (emphasis added and in the original) (internal citations omitted).

prove *only **one*** of requirements (2) and (3) of the general test, ***not both***." *Zelenika v. Commonwealth Edison Co.*, No. 09 C 2946, 2012 WL 3005375, at *10 (N.D. Ill. July 23, 2012)) (emphasis added.)

In sum, the fact that Plaintiff made more than $100,000 per year significantly reduces Defendants' burden in two significant respects. *First*, Defendants only have to examine Plaintiff's duties on a "customary and regular" basis as opposed to a heightened "primary responsibility" standard. "The phrase 'customarily and regularly' is not a majority of the time test." *Hartman v. Prospect Mortgage, LLC*, 11 F. Supp. 3d 597, 603 (E.D. Va. 2014) (granting summary judgment to employer). Defendants thus only have to show that Plaintiff performed those tasks with "a frequency that must be greater than occasional, but which, of course, may be less than constant." 29 CFR 541.701. "Customarily and regularly" can mean "*approximately 10–20 percent*" of employee's time, *see Lint v. Nw. Mut. Life Ins. Co.*, No. 09CV1373 DMS RBB, 2010 WL 4809604, at *3 (S.D. Cal. Nov. 19, 2010) (emphasis added), o "'*one or two hours a day, one or two times a week[.]*'" *Taylor v. Waddell & Reed, Inc.*, No. 09CV2909 AJB WVG, 2012 WL 10669, at *3 (S.D. Cal. Jan. 3, 2012) (emphasis added).[7]

*Second*, Defendants only have to prove *either* of the second *or* third prongs of the test for an administrative exemption. Specifically, Defendants only have to show that Plaintiff either, customarily and regularly, (a) performed duties relating to the general administration of Townstone's business, *or* (b) exercised discretion and independent judgment in matters of significance. 29 CFR § 541.601. Here, Defendants easily satisfy their reduced burden.[8]

---

[7] Each of these cases determined whether a sales person "customarily and regularly" performed outside sales to meet the outside sales exemption under 29 CFR § 541.500. But the cases are equally applicable to the administrative exemption under Section 541.200 because the term "customarily and regularly" has but one definition for all exemptions. *See* 29 CFR § 541.701.

[8] It is anticipated that Plaintiff will point to the Department of Labor's Administrator's Interpretation No. 2010-1, and argue that all mortgage loan officers whose primary duty is sales do not qualify for the administrative exemption. Plaintiff's anticipated reliance on the Department's interpretation is misplaced for several reasons.

### III. Plaintiff is Exempt Because He Earned More than $100,000 per year and Exercised Discretion and Independent Judgment.

The federal regulations define "discretion and independent judgment" as "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered," where, among other things, the employee "has authority to commit the employer in matters that have significant financial impact" or "negotiate and bind the company on significant matters[.]" 29 CFR § 541.202. Significantly, this test does not mean that the employee has absolute autonomy. *Id.* Instead, "employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." *Id.*[9]

Here, on a "daily" basis Plaintiff exercised discretion regarding matters that formed the essence of, and had "significant financial impact" on, Townstone's business. As set forth above, Plaintiff suggested loan products and strategies to borrowers. (DSMF ¶¶ 15-16, 18.) More

---

*First*, the Department's interpretation did not relate in any way to employees who were highly compensated. The Department's interpretation was based on the "primary duty" standard, not on the reduced "customarily and regularly" standard, and was predicated on the employer having to show **both** prongs 2 and 3 of the administrative exemption test, as opposed to just one of those prongs when dealing with highly compensated employees. *Second*, nowhere in the Department's interpretation did the Department discuss whether mortgage loan officers customarily and regularly exercised "discretion and independent judgment with respect to matters of significance." *Third*, the Department's interpretation is not controlling authority. *See, e.g., Skidmore v. Swift & Co.*, 323 U.S. 134, 139-140 (1944) (holding that, in applying the FLSA, rulings of administrator *are not controlling upon courts*, but may be resorted to for guidance); *Great Am. Ins. Co. v. United States*, 55 F. Supp. 3d 1053, 1058 (N.D. Ill. 2014) ("[E]ven where a court may give deference to an agency interpretation, courts have the reserve of power to substitute their own judgment on all questions of statutory interpretation. The preliminary power of interpretation is in the agency, but the final power of interpretation is in the courts.") (internal citation and quotation omitted). In sum, the Department's interpretation is inapplicable to this case.

[9] *See also Blanchar v. Std. Ins. Co.*, 736 F.3d 753, 758-59 (7th Cir. 2013) (affirming summary judgment for employer in part because plaintiff employee exercised discretion and independent judgment); *see also McKeen-Chaplin v. Provident Sav. Bank, FSB*, No. 2:12-CV-03035-GEB-AC, 2015 WL 4873160, at *6 (E.D. Cal. Aug. 12, 2015) (entering summary judgment in favor of mortgage lender, in part because plaintiff underwriters had discretionary authority to place "conditions" on loan application to decline loans unless the borrower satisfied those conditions); *Lutz v. Huntington Bancshares Inc.*, No. 2:12-CV-01091, 2014 WL 2890170, at *18 (S.D. Ohio June 25, 2014) (same); *Henry v. Quicken Loans, Inc.*, 698 F.3d 897, 901 (6th Cir. 2012) (affirming jury verdict that mortgage loan officers were exempt, in part because they exercised discretion and independent judgment); *Hines v. State Room, Inc.*, 665 F.3d 235, 245-46 (1st Cir. 2011) (affirming summary judgment for employer, in part because plaintiff sales managers exercised discretion and independent judgment).

importantly, however, Plaintiff determined how much profit Townstone would make on each loan. He chose the interest rate, the investor on the secondary market to sell the loan, the lock period, and whether or not to waive closing costs to a borrower. (*Id.* ¶¶ 19-31.) Each of these decisions (a) required Plaintiff to compare multiple "courses of conduct," and (b) directly impacted the amount of money that Townstone. 29 CFR § 541.202. Plaintiff was akin to a salesman who was allowed to determine whether to sell a product to a particular customer and then determine the price at which to make a sale. Indeed, it is difficult to fathom anything more important to Townstone's business than the determination of the profit made on each loan by choosing the interest rate. Accordingly, the Court should grant summary judgment in favor of Defendants on Counts I and II for this reason alone.

### IV. Plaintiff Regularly Performed Work Directly Related to the General Business Operations of Townstone and its Customers.

The Court also should grant summary judgment in favor of Defendants because Plaintiff customarily and regularly performed tasks related to the general operations of Townstone's business and its customers. Work related to the "general operations" of a business includes "work in functional areas such as … finance; … quality control; … advertising; marketing; research; … legal and regulatory compliance; and similar activities." 29 CFR § 541.201(b). In turn, work related to the general operations of an employer's customers includes "employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example)[.]" *Id.* § 541.201(c).[10]

---

[10]*See also Henry*, at 900 (affirming jury verdict, where non-highly compensated loan officers admitted their primary duties went beyond mere sales: "Counsel for Quicken also questioned several of the plaintiffs about their resumes, pointing out that the documents described responsibilities ranging far beyond sales. Plaintiff Krista Quinn explained that she '[p]repare[d] and implement[ed] strategies for clients to ach[ie]ve their financial goals and manage their mortgage more effectively' … and acknowledged she would have listed sales on her resume had it been her primary duty.") (internal citations omitted); *see also In re RBC Dain Rauscher.*, 703 F. Supp. 2d at 943-946 (granting summary judgment to employer on four plaintiff-employees' FLSA claims because the employees regularly "evaluated customers in terms of financials needs … to help them identify their investment objectives" and

As discussed above, Plaintiff admittedly performed several of these tasks on a regular basis. Plaintiff acted as an advisor to Townstone's customers (what he characterized as "hand holding") on a "daily" basis "to make sure they are making the best informed decision" about which loan product to select. Plaintiff admitted that he "educate[ed] and advis[ed]" customers "on best-fit financial solutions" and [b]uilt individual financial systems for clients . . . leading to new and improved business model at Townstone and improved client service." (DSMF. ¶¶ 15-17; 19.)

In addition, Plaintiff also worked on marketing and general sales promotion. (*Id.* ¶¶ 34-39.) Under the federal regulations:

> 'promoting sales' means something more than routine selling efforts focused simply on particular sales transactions. Sales promotion … as consists of marketing activity aimed at promoting (i.e., increasing, developing, facilitating and/or maintaining) customer sales generally. 'Promoting sales' does not encompass activities necessarily included in the process of closing specific sales.

*Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 905 (3rd Cir. 1991).

Here, Plaintiff admitted that he regularly engaged in general marketing activity in addition to making particular individual sales. Plaintiff admitted that he was required to attend seminars once "every four or five months"; worked on Townstone's radio show once "every five or six weeks"; sent out flyers; met with referral sources "two or three times a month"; attended real estate brokers' open houses once "a few times a month"; and regularly attended closings, all with the goal of generally marketing himself and Townstone. (DSMF ¶¶ 35-38.)

---

"gathered information about clients and investment opportunities so that he could make suitable investment recommendations."); *cf Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 534 (2d Cir. 2009)(holding that mortgage loan underwriters did not meet this prong of the administrative exemption *precisely because* there was "no indication that underwriters were expected to advise customers as to what loan products best met their needs and abilities.")

### C. Plaintiff Performed Market Research.

Finally, Plaintiff (and other loan officers) was responsible for researching which investors offered the best rates that yielded the greatest profits to Townstone. (*Id.* ¶ 40.) This too qualifies him as an exempt employee. *See Austin v. CUNA Mut. Ins. Soc.*, 240 F.R.D. 420, 429 (W.D. Wis. 2006) (granting summary judgment to employer because employee paralegal performed, among other things, legal research: "That is why tasks such as 'auditing, insurance, quality control ... research ... public relations and ... similar activities' are covered specifically under § 541.201(b)."). Accordingly, the Court should enter summary judgment on Counts I and II for this additional independent basis.

### V. Plaintiff is an Exempt Outside Sales Employee.

Even if Plaintiff is not exempt as a highly compensated administrative employee (he is), Plaintiff nevertheless also qualifies as an exempt outside sales employee. The regulations generally define an outside sales employee as one: (1) whose primary duty is making sales, and (2) who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty. 29 CFR 541.500(a).

Even employees who work in an office can qualify as exempt outside salespersons. *See Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 619 (E.D.Va. 2014) (granting summary judgment to mortgage loan employer on outside sales exemption because loan officer employee performed tasks away from the office on a greater than occasional basis); *Dixon v. Prospect Mortg., LLC*, 11 F. Supp. 3d 605, 609 (E.D.Va. 2014) (same). The applicable regulations provide that "work performed incidental to and in conjunction with the employee's own outside sales or solicitations*, including incidental deliveries and collections*, shall be regarded as exempt outside sales work." 29 CFR § 541.500(b) (emphasis added).

>Here, Plaintiff admitted that he:
>
>*would visit a client at his or her place of business approximately once a week* to pick up financial documents necessary to complete the loan application process and/or obtain client signatures on required documents. Plaintiff's visits with clients lasted approximately 30 minutes to 1.5 hours.

(DSMF ¶ 42.) This admission is fatal to Plaintiff's assertion that he was not exempt, and confirms that that he made "incidental deliveries and collections," "critical to the sales process," "on a consistent basis[.]"  The federal regulations *mandate* that such tasks "**_shall_** *be regarded as exempt outside sales work*." 29 CFR § 541.503(a) (emphasis added).[11]

Accordingly, Defendants are entitled to summary judgment on Counts I and II for the third independent reason – namely, because Plaintiff was an exempt outside sales employee.

## CONCLUSION

Based on the foregoing, the Court should enter summary judgment in favor of Defendants judgment on Counts I and II of Plaintiff's Complaint.

Dated:  March 28, 2016

Respectfully submitted,

TOWNSTONE FINANCIAL, INC.,
BARRY STURNER, and DAVID HOCHBERG

By: /s/Jonathan M. Cyrluk
     One of their Attorneys

Jonathan M. Cyrluk (cyrluk@carpenterlipps.com)
Josh Goldberg (goldberg@carpenterlipps.com)
CARPENTER LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2640
Chicago, Illinois 60601
Phone:  (312) 777-4300

---

[11] Indeed, Plaintiff's outside sales efforts bore fruit.  Plaintiff sold 148 loans during his tenure at Townstone; 48, or one-third, of them were from his own leads. (DSMF ¶ 43.)