IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JASON SILVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 14-cv-1938 |
| v. | ) | |
| | ) | |
| TOWNSTONE FINANCIAL, INC., et al, | ) | Hon. Sharon Johnson Coleman |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Jonathan M. Cyrluk
Josh Goldberg
CARPENTER LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2640
Chicago, Illinois 60601
Phone: (312) 777-4300

*Attorneys for Defendants*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**……………………………………………………………………ii

**INTRODUCTION** .............................................................................................. 1

**ARGUMENT** .................................................................................................... 1

    I.      Plaintiff Misstates Defendants' Burden of Proof Regarding the Exemptions. ....... 1

    II.     Plaintiff was An Exempt Highly Compensated Administrative Employee............ 2

          A.     Plaintiff Misstates the Test for Determining the Administrative …………2
                 Exemption.

          B.     It is Undisputed that Plaintiff Customarily and Regularly Exercised ..........
                 Discretion and Independent Judgment Over Matters of Significance. ....... 4

          C.     Plaintiff Customarily and Reglularly Performed Tasks Related to the
                 General Operations of Townstone's Business.ance………………………8

    III.    Plaintiff Was an Exempt Outside Sales Employee. ............................................. 11

          A.  The Facts ..................................................................................... 11

          B.  The Law — which Plaintiff Surprisingly Cites as "Analogous" — ..................
            Mandates Denying Plaintiff's Motion and Granting Defendants' Motion. .... 13

    IV.    Plaintiff is Exempt Under the Combination Exemption. ...................................... 14

    V.     The Court Should Enter Summary Judgment in Favor of Defendants on Plaintiff's
          Retaliation Claim. ...................................................................................... 16

**CONCLUSION** ................................................................................................ 19

i

# TABLE OF AUTHORITIES

**Cases**

*Arnold v. Ben Kanowsky, Inc*,
361 U.S. 388 (1960) .................................................................................................... 2

*Austin v. CUNA Mut. Ins. Soc.*,
240 F.R.D. 420 (W.D. Wis. 2006) ............................................................................... 9

*Blakes v. Illinois Bell Tel. Co.*,
75 F. Supp. 3d 792 (N.D. Ill. 2014) ........................................................................... 16

*Blanchar v. Std. Ins. Co.*,
736 F.3d 753 (7th Cir. 2013) ........................................................................................ 6

*Cotto v. John C. Bonewicz, P.C.*,
No. 13 C 842, 2015 WL 3609167 (N.D. Ill June 9, 2015) ..................................... 17, 18

*Dixon v. Prospect Mortg., LLC*,
11 F. Supp. 3d 605 (E.D. Va. 2014) ....................................................................... 1, 3, 14

*Great Am. Ins. Co. v. United States*,
55 F. Supp. 3d 1053 (N.D. Ill. 2014) ......................................................................... 10

*Hartman v. Prospect Mortgage, LLC*,
11 F. Supp. 3d 597 (E.D. Va. 2014) ................................................................. 1, 3, 13, 14

*Hartz v. Prospect Mortg., LLC*,
11 F. Supp. 3d 612 (E.D.Va. 2014) ........................................................................... 13

*Henry v. Quicken Loans, Inc.*,
698 F.3d 897 (6th Cir. 2012) ............................................................................. 6, 8, 10

*Hicks v. Mercedes-Benz U.S. Intern., Inc.*,
2002 WL 1566140 (N.D. Ala. Apr. 30, 2012) .............................................................. 4

*In re RBC Dain Rauscher Overtime Litig.*,
703 F. Supp. 2d 910 (D. Minn. 2010) ....................................................................... 3, 8

*IntraComm, Inc. v. Bajaj*,
492 F.3d 285 (4th Cir. 2007) ..................................................................................... 14

*Kasten v. Saint–Gobain Performance Plastics Corp.*,
563 U.S. 1 (2011) ....................................................................................................... 16

*Kasten v. Saint-Gobain Performance Plastics Corp.*,

703 F.3d 966 (7th Cir. 2012) ........................................................................... 16

*Lederman v. Frontier Fire Prot., Inc.*,
    685 F.3d 1151 (10th Cir. 2012) .................................................................... 2

*Lutz v. Huntington Bancshares Inc.*,
    No. 2:12-CV-01091, 2014 WL 2890170 (S.D. Ohio June 25, 2014) ........................ 6, 7, 8

*McKeen-Chaplin v. Provident Sav. Bank, FSB*,
    No. 2:12-CV-03035-GEB-AC, 2015 WL 4873160 (E.D. Cal. Aug. 12, 2015) ................ 6

*O'Donnell v. America At Home Healthcare & Nursing Services, Ltd.*,
    2015 WL 684544 (N.D. Ill. Feb. 17, 2015) ..................................................... 17

*Perez v. Brands Mart Serv. Corp.*,
    2011 WL 3236022 (S.D. Fla. July 28, 2011) ................................................... 17

*Renfro v. Indiana Michigan Power Company*,
    497 F.3d 573 (6th Cir. 2007) ............................................................... 1, 6, 7, 8

*Roe-Midgett v. CC Services, Inc*,
    512 F.3d 868 (7th Cir. 2008) ............................................................... 1, 6, 7, 8

*Rogers v. AT & T Servs., Inc.*,
    No. 11 C 5550, 2014 WL 4361767 (N.D. Ill. Sept. 3, 2014) ............................... 2

*Santiago v. Saunders*,
    2015 WL 4454782 (S.D. Fla. July 20, 2015) ................................................... 15

*Schaefer-LaRose v. Eli Lilly and Co.*,
    679 F.3d 560 (7th Cir. 2012) ...................................................................... 9

*Schmidt v. Eagle Waste & Recycling, Inc.*,
    599 F.3d 626 (7th Cir. 2010). ............................................................... 14, 15

*Scott v. Sunrise Healthcare Corp.*,
    195 F.3d 938 (7th Cir. 1999) .................................................................... 16

*Sehie v. City of Aurora*,
    432 F.3d 749 (7th Cir. 2005) .................................................................... 10

*Shadduck v. United Parcel Serv., Inc.*,
    No. 10-C-2203, 2011 WL 4452210 (E.D. Ill. Sept. 26, 2011) ............................ 16

*Simmons v. Wal-Mart Associates, Inc.*,
    2005 WL 1684002 (S.D. Ohio 2005) .......................................................... 15

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ........................................................................................... 10

*Taylor v. Waddell & Reed, Inc.*,
    No. 09CV2909 AJB WVG, 2012 WL 10669 (S.D. Cal. Jan. 3, 2012) ............................. 3

*Traweek v. Glob. Sols. & Logistics LLC*,
    No. 2:14-CV-00308-LSC, 2015 WL 4545634 (N.D. Ala. July 28, 2015) ......................... 4

*Wolfram v. PHH Corp.*,
    No. 1:12-CV-599, 2014 WL 2737990 (S.D. Ohio June 17, 2014) ................................... 14

*Yi v. Sterling Collision Centers, Inc.*,
    480 F.3d 505 (7th Cir. 2007) ................................................................................. 2

*Zelenika v. Commonwealth Edison Co.*,
    No. 09 C 2946, 2012 WL 3005375 (N.D. Ill. July 23, 2012) ...................................... 2, 3

**Rules and Regulations**

29 C.F.R. § 541.200 ........................................................................................... 2

29 C.F.R. § 541.201 ........................................................................................... 8

29 C.F.R § 541.202 ........................................................................................... 6

29 C.F.R § 541.500 ................................................................................... 11, 12, 15

29 C.F.R. § 541.503 ........................................................................................... 13

29 C.F.R § 541.601 ........................................................................................... 3

29 C.F.R § 541.701 ........................................................................................... 3

29 C.F.R.§ 541.708 ........................................................................................... 14

## INTRODUCTION

In an attempt to prevent summary judgment from being entered against him, Plaintiff Jason Silver ("Plaintiff") filed a makeweight motion for summary judgment, hoping that the Court will "split the baby" and deny both sides' motions. Tellingly, Plaintiff cites many cases wherein the court granted summary judgment in favor of the *defendant employers* under analogous facts. *See, e.g., Roe-Midgett v. CC Services, Inc*, 512 F.3d 868 (7th Cir. 2008); *Renfro v. Indiana Michigan Power Company*, 497 F.3d 573 (6th Cir. 2007); *Hartman v. Prospect Mortgage, LLC*, 11 F. Supp. 3d 597, 603 (E.D. Va. 2014); *Dixon v. Prospect Mortg., LLC*, 11 F. Supp. 3d 605 (E.D. Va. 2014); *Lutz v. Huntington Bancshares Inc.*, No. 2:12-CV-01091, 2014 WL 2890170 (S.D. Ohio June 25, 2014) (all cited at Dkt. 52 at 13, 14, 10, 7, 14, respectively).

Even worse, Plaintiff misstates the applicable law and takes great liberties with the factual record in an effort to cast his job responsibilities outside of any exemption. But Plaintiff cannot hide from his own admissions that not only mandate denial of Plaintiff's motion, but compel granting Defendants' motion.

Finally, with respect to Plaintiff's retaliation claim (Count III), Plaintiff admits that, at most, he complained that he was not paid enough money. He cannot point to any complaint about not being paid overtime and that Defendants' conduct was illegal. Accordingly, the Court should deny his motion for summary judgment, and enter judgment in favor of Defendants on Plaintiff's retaliation claim.

## ARGUMENT

### I.    Plaintiff Misstates Defendants' Burden of Proof Regarding the Exemptions.

The main issue presented by the parties' competing motions is whether Plaintiff is exempt under the FLSA. Plaintiff incorrectly asserts that Defendants "***must prove***" that Plaintiff's exemption "comes '*plainly and unmistakably*' within the exemptions terms and

spirit." (Dkt. 52 at p. 4; emphasis added.) The Supreme Court did not hold, as Plaintiff contends, that employers must prove an exemption under a heightened "plain and unmistakable" standard, *Arnold v. Ben Kanowsky, Inc*, 361 U.S. 388, 392 (1960) (cited by Plaintiff at Dkt. 2 at 4), and the Seventh Circuit has squarely held that the burden of proof for an employer regarding exemptions is merely by preponderance of the evidence. *Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 507 (7th Cir. 2007) (Posner, J.); *see also Rogers v. AT & T Servs., Inc.*, No. 11 C 5550, 2014 WL 4361767, at *5 (N.D. Ill. Sept. 3, 2014) (same). In fact, Plaintiff's attempt to create a heightened "plainly and unmistakeably" standard has been roundly criticized. *See, e.g., Lederman v. Frontier Fire Prot., Inc.*, 685 F.3d 1151, 1158-59 (10th Cir. 2012).

## II.     Plaintiff was An Exempt Highly Compensated Administrative Employee.

### A.     Plaintiff Misstates the Test for Determining the Administrative Exemption.

Defendants' first affirmative defense is that Plaintiff was an exempt administrative employee. (Dkt. 30 at 13.) The federal regulations establish two different tests to determine the administrative exemption. The first test is more rigid, and applies if an employee makes less than $100,000 per year. There, an employee is exempt if his "primary" job responsibility includes both: (1) performance of work related to the management or general business operations of the employer or its customers; ***and*** (2) "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200.

The second test is a relaxed standard, and applies if employee earns more than $100,000 per year. A highly compensated employee is exempt if the "employee '***regularly*** [as opposed to "primarily"] performs any one or more of the exempt duties or responsibilities' of a bona fide administrative employee. Consequently, for highly compensated employees, an employer need prove *only **one*** of requirements [1] and [2] of the general test, ***not both***." *Zelenika v.*

*Commonwealth Edison Co.*, No. 09 C 2946, 2012 WL 3005375, at *10 (N.D. Ill. July 23, 2012)) (emphasis added.) Thus, an employee's primary duty *is not relevant* to a court's determination whether a highly compensated employee qualifies for the administrative exemption. *In re RBC Dain Rauscher Overtime Litig.*, 703 F. Supp. 2d at 943. 910, 943 (D. Minn. 2010).[1]

"The phrase 'customarily and regularly' is not a majority of the time test." *Hartman*, 11 F. Supp. 3d at 603. An employee only has to perform tasks with "a frequency that must be greater than occasional, but which, of course, may be less than constant." 29 CFR 541.701. "Customarily and regularly" can mean "'*one or two hours a day, one or two times a week[.]*'" *Taylor v. Waddell & Reed, Inc.*, No. 09CV2909 AJB WVG, 2012 WL 10669, at *3 (S.D. Cal. Jan. 3, 2012) (emphasis added). Thus, a highly compensated employee is exempt if, "one or two hours a day, one or two times per week," he **_either_** (i) performed work related to the general operations of the business, **_or_** (2) exercised discretion with respect to matters of significance. 29 C.F.R. § 541.601; *see also In re RBC Dain Rauscher Overtime Litig.*, 703 F. Supp. 2d at 943.

Here, Plaintiff admits that he made more than $100,000 per year. (Dkt. 53 at ¶ 30.) Yet, Plaintiff analyzes his duties as if he did not do so. He incorrectly asserts that Defendants must prove that Plaintiff's duties "primarily" – instead of "customary and regularly" – included both – instead of "either" – prongs of the test for the administrative exemption. (Dkt. 52 at 8-15.)

Plaintiff has indicated that he will argue that he made more than $100,000 only in calendar year 2013, but not in the partial years of 2012 and 2014. (Dkt. 60 at 5-6, n.2.) Plaintiff is wrong. "The employer may utilize any 52-week period as the year, such as a calendar year, a fiscal year, or an anniversary of hire year. If the employer does not identify some other year period in advance, the calendar year will apply." Here, on anniversary-to-anniversary basis,

---

[1] *See* 29 CFR § 541.601(c) ("A high level of compensation is a strong indicator of an employee's exempt status, *thus eliminating the need for a detailed analysis of the employee's job duties*.") § 541.601(c) (emphasis added).

Plaintiff made more than $100,000.[2]  (Dkt. 56, Defendants' Local Rule 56.1 Statement of Material Facts in Support of their Motion for Summary Judgment ("DSF") at ¶¶ 45-47.)[3]

In sum, because Defendants have stated that the 52-week period should be calculated on an anniversary-to-anniversary basis, the relaxed test for determining the administrative exemption applies to the entirety of Plaintiff's employment.  At a minimum, given Plaintiff's admission that he earned more than $100,000 in 2013 – which is 60% of the time of his employment – the relaxed test should apply to Plaintiff's employment in 2013.  Given Plaintiff's concession, there is no excuse for his failure to even mention the reduced standard.  His failure to do so shows that Plaintiff understood that if the Court were to apply the correct standard, then, not only should Plaintiff's motion be denied, summary judgment should be entered against him.

### B. It is Undisputed that Plaintiff Customarily and Regularly Exercised Discretion and Independent Judgment Over Matters of Significance.

[2] To avoid admitting he was highly compensated, Plaintiff implies that Defendants failed to identify the anniversary-to-anniversary period "in advance" of Plaintiff's employment, so the Court must calculate Plaintiff's compensation based on a calendar year.  (Dkt. 60 at 5-6, n. 2.)  Plaintiff is wrong again.  *First*, there is no authority requiring an employer to identify the year period at the time the employee is hired. If anything, the case law indicates that the employer need only identify the year period "in advance" of a decision on the merits of the claimed exemption. *See*, *e.g.*, *Hicks v. Mercedes-Benz U.S. Intern., Inc.*, No. 7:08–cv–0536, 2012 WL 1566140, *3-4 (N.D. Ala. Apr. 30, 2012) (recognizing that the employer must identify the year period "in advance," but ruling in favor of the employer that the employees were highly compensated based solely upon the declaration of the employer's human resources manager submitted in support of the employer's motion for summary judgment). *Second*, Plaintiff's position is illogical and contrary to other regulations, which mandate that an employee's duties and salary be measured for purposes of FLSA exemptions by what the employee *actually did and was paid*, **not** by what *was contemplated* at the beginning of the employment.  *See Traweek v. Glob. Sols. & Logistics LLC*, No. 2:14-CV-00308-LSC, 2015 WL 4545634, at *5, fn 5 (N.D. Ala. July 28, 2015) ("[T]he question is ... not what [a plaintiff] was owed under his employment agreement; rather, the question is what compensation [a plaintiff] *actually received.*") (emphasis added); *see also* 29 C.F.R. § 541.2.  Indeed, requiring an employer of an at-will employee to identify the year period prior to the date of hire is not practicable because the employer has no way of knowing when the employee's employment will end. Here, Defendants not only identified the anniversary basis for purposes of their motion for summary judgment (Dkt. 56 ¶¶ 44-47), they also identified that period before they answered the complaint and in discovery. (*See* **Exhibit 1**, attached hereto; *see also* **Exhibit 2**, attached hereto, at Resp. 10.)

[3] In an effort to avoid duplication, Defendants cite to their DSF submitted in connection with their earlier-filed motion for summary judgment, rather than assert those same facts in an additional statement of facts that would refer to the same exhibits previously filed with the Court.  This is the same approach taken by Plaintiff.  *See* Dkt. 60, *passim.*

4

It is beyond question that Plaintiff customarily and regularly – even primarily – exercised discretion and independent judgment over matters of significance.  Plaintiff suggested loan products and strategies to borrowers.  (DSF ¶¶ 15-18.)  Most significantly, Plaintiff determined how much profit Townstone would make on each loan.  He chose the interest rate, the investor on the secondary market to sell the loan, the lock period, and whether or not to waive closing costs to a borrower. (*Id.* ¶¶ 19-31.)

To avoid these inconvenient facts, Plaintiff asserts that he really didn't have discretion because a computer program picked the loan products he could offer; a range of interest rates were set by the investor; and Townstone further refined that range by mandating that an interest rate be selected that would yield a certain profit.  (Dkt. 52 at 2-3, 14-15.)[4]  Plaintiff also asserts that Defendant Sturner had to approve each loan.  (Dkt. 53 at ¶ 45.)[5]

Plaintiff's simplistic description of his authority is belied by his own testimony and other independent evidence. Even adopting Plaintiff's statement that Defendants set a minimum requirement of a 2% profit margin on each loan (Dkt. 53 ¶ 43), Plaintiff admits that he – and not a computer program – had discretion to determine an interest rate and lock period that would yield a profit of greater than the 2%. (Resp. to PSF at ¶ 43; DSF ¶¶ 24-25.) Plaintiff also admits

---

[4] In one of the many instances where the record citation does not support Plaintiff's statement of fact, Plaintiff cites to his own deposition and asserts that "Defendant's Encompass computer program [] identified which loan products could be offered to the customer."  (PSF ¶ 40.)  Nowhere in the cited testimony, however, did Plaintiff mention the Encompass software or any software.  In truth, Encompass software did not identify the loan products or interest rates to offer borrower.  (Defendants' Statement of Additional Material Facts ("DSAF") at ¶ 14.)

[5] Defendants dispute that Plaintiff had anything other than unfettered discretion to determine the interest rate and lock period, and therefore Plaintiff's motion must be denied on this basis alone.  (Defendants' Response to Plaintiff's Local Rule 56.1 Statement of Material Facts ("Resp. to PSF") at ¶¶ 42-45; DSF ¶¶ 19-31.)

that he sent a loan to Sturner for review only *after* he locked the loan with an investor.  (DSF ¶¶ 26; DSAF ¶ ¶ 15.)

These admissions are sufficient for the Court to find as a matter of law that Plaintiff exercised discretion and independent judgment over matters of significance.  It is irrelevant that Plaintiff's available choices were limited by Defendants or subject to later review.  The federal regulations define "discretion and independent judgment" as "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered[.]"  29 CFR § 541.202.   "[E]mployees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level."  *Id.*; *see also Blanchard v. Std. Ins. Co.*, 736 F.3d 753, 758-59 (7th Cir. 2013) (summary judgment for employer); *see also McKeen-Chaplin v. Provident Sav. Bank, FSB*, No. 2:12-CV-03035-GEB-AC, 2015 WL 4873160, at *6 (E.D. Cal. Aug. 12, 2015) (summary judgment in favor of mortgage lender because plaintiffs had discretion to place "conditions" on loan applications); *Lutz*, 2014 WL 2890170 at *18 (discussed below); *Henry v. Quicken Loans, Inc.*, 698 F.3d 897, 901 (6th Cir. 2012) (mortgage loan officers deemed exempt, in part, because they exercised discretion and independent judgment).  Indeed, Plaintiff cites three cases in which summary judgment was entered *in favor of the employer* where the employee's discretion was limited by guidelines set by the employer.  *See* Dkt. 52 at 13-14, citing *Roe-Midgett*, 512 F.3d at 873-76; *Renfro*, 497 F.3d at 577-78; and *Lutz*, 2014 WL 2890170 at *15-20.

For example, *Lutz* involved overtime claims by loan underwriters who, like Plaintiff, asserted that they merely "appl[ied] the Bank's lending criteria[.]" 2014 WL 2890170 at *15. The court rejected the argument, holding that "[e]mployees in heavily-regulated industries [] can qualify for the administrative exemption if they exercise discretion and independent judgment

6

within the confines of those regulations." *Id.* at \*16 (citations omitted. The *Lutz* court noted that "[i]f there can be more than one 'correct response,'" then the employee exercises discretion. *Id.* at \*16; ); *see also Renfro*, 497 F.3d at 577 (entering summary judgment for Plaintiff against employee technical writers who asserted, like Plaintiff here, that they had to follow "rigid procedures for how to craft maintenance procedures" because "two different writers may solve the same problem two different ways, even though both solutions are equally effective."); *see also Roe Midgett*, 512 F.3d at 875 ("independent judgment is not foreclosed by the fact than employee's work is performed in accordance with strict guidelines").

In *Roe-Midgett*, the Seventh Circuit rejected nearly identical arguments that Plaintiff makes in this case. There, the employees were claims adjusters responsible for "investigating auto accident damage, making repair or replacement determinations, drafting estimates, and settling claims of up to $12,000 where liability has been established and coverage approved." 512 F.3d at 868. The employees asserted, like Plaintiff, that they did not exercise discretion because their determinations were "constrained by [the employer's adjusting manual and estimating software" and only made "coverage recommendations to their superiors." *Id.* at 874, 875. The Court rejected the arguments, noting that:

> That choice need not be final or otherwise immune from review an exercise of discretion and independent judgment may "consist of recommendations for action rather than the actual taking of action."

*Id.* at 873 (*quoting* 29 C.F.R. § 541.207(e)).

Here, like the employees in *Lutz* and *Renfro*, the loan officers had panoply of choices to make regarding loan products to recommend, interest rates to charge, the periods within which to lock the loan, and the identity of the investor on the secondary market. Indeed, using the Greentree interest rate sheet from May 31, 2013 as an example, Plaintiff still could choose *10*

different interest rates, and *10* different lock periods that would yield a multitude of different profits to Townstone that were greater than 2%. (*See* DSF ¶ 21 at Ex. I, p. 4 of 32.) Two different loan officers faced with the same prospective client could recommend different products, quote different interest rates, use different investors, and choose different lock periods, all yielding the "correct" answer of a loan that made Townstone more than a 2% profit. And even if Plaintiff's choices were subject to review by Townstone (they were not), just as the decisions made by the adjusters in *Roe-Midgett* were subject to review by others, Plaintiff still had the authority to make those recommendations to Townstone. As in *Renfro, Roe-Midgett,* and *Lutz*, the Court should enter summary judgment in favor of Defendants and against Plaintiff.

### C. Plaintiff Customarily and Regularly Performed Tasks Related to the General Business Operations of Townstone's Business.

Applying the incorrect standard, Plaintiff states that Defendants cannot satisfy this other prong of the administrative exemption because he did not "primarily" perform tasks related to the general operations of Townstone's business. (Dkt. 52 at 8-12.) Applying the correct "customarily and regularly" standard, it is clear that Plaintiff's work satisfies this prong.

Work related to the "general operations" of a business includes "work in functional areas such as … finance; … quality control; … advertising; marketing; research; … legal and regulatory compliance; and similar activities." 29 CFR § 541.201(b). Such work also includes "advis[ing] or consult[ing] to their employer's clients or customers (as tax experts or financial consultants, for example)[.]" *Id.* § 541.201(c).).[6]

---

[6]*See also Henry*, 698 F.3d at 900 (non-highly compensated loan officers were exempt where, like Plaintiff, their duties included preparing and implementing "strategies for clients to ach[ie]ve their financial goals and manage their mortgage more effectively") (internal citations omitted); *see also In re RBC Dain Rauscher*, 703 F. Supp. 2d at 943-946 (summary judgment in favor of employer where employees regularly "evaluated customers in terms of financials needs … to help them identify their investment objectives").

Plaintiff regularly engaged in marketing, market research, compliance and other administrative duties. (*See* DSF ¶¶ 33-38, 40; *see also* PSF, Ex. A at 71:9-75:23.) Plaintiff acted as an advisor to Townstone's customers "to make sure they are making the best informed decision" about which loan product to select. He "educate[ed] and advis[ed]" customers "on best-fit financial solutions" and [b]uilt individual financial systems for clients . . . leading to new and improved business model at Townstone and improved client service." (DSF. ¶¶ 15-19.) Plaintiff also stated in his resume that he: "Multitasked sales support for ***small, resource-stripped company*** within different departments, including underwriting, processing and sales" and that he "[f]ollowed organizational procedure, which included document preparation, due diligence and a system of checks and balances yielding improved organizational structure." (Resp. to PSF ¶ 38; emphasis added.) In addition, Plaintiff also worked on marketing and general sales promotion. (DSF ¶¶ 34-39.)

Finally, unlike loan officers at other mortgage bankers, Plaintiff conducted market research to determine which investors offered the best rates that yielded the greatest profits to Townstone. (*Id.* ¶ 40.) This too qualifies him as an exempt employee. *See Austin v. CUNA Mut. Ins. Soc.*, 240 F.R.D. 420, 429 (W.D. Wis. 2006) (granting summary judgment to employer because employee paralegal performed, among other things, legal research).

Despite his admissions, Plaintiff asserts that he did not perform functions relating to the general operations of Townstone's business because his "primary duty was sales." (Dkt. 52 at 8.) Thus, according to Plaintiff, no salesperson can ever qualify for the administrative exemption. Plaintiff is wrong. *See, e.g. Schaefer-LaRose v. Eli Lilly and Co.*, 679 F.3d 560 (7th Cir. 2012) (even salespersons that did not earn $100,000 per year can meet both prongs of the

administrative exemption); *Henry*, 698 F.3d at 900-02 (jury verdict in favor of mortgage lender against loan officers that asserted identical arguments as Plaintiff).

As support, Plaintiff relies almost exclusively on a 2010 US Department of Labor's ("DOL") Wage and Hour Division Administrator's Opinion letter (the "Letter"), wherein the Administrator opines that the "*typical* duties" of the average loan officer do not meet the administrative exemption. (Dkt. 52 at 9; emphasis added.) Plaintiff's reliance on the Letter is misplaced for several reasons. *First*, the DOL analyzed a "typical" loan officer under the "primary duty" standard, as opposed to the "customarily and regularly" standard applicable to highly compensated employees such as Plaintiff.

*Second*, the Letter does not apply to all loan officers; has no precedential value; and nothing precludes the Court:

> from determining whether certain types of employees, including employees at *other* companies working under *different* conditions, are exempt from the FLSA. They simply apply the same inquiry to *distinct scenarios*, in some instances through *non-binding opinion letters … None of these sources speaks to the parties' dispute in this instance* over whether [the plaintiff mortgage bankers] were eligible for the exemption.

*Henry*, 698 F.3d at 901-902 (emphasis in the original) (internal citations omitted).[7]

In sum, it is undisputed that Plaintiff "customarily and regularly" performed work related to the general operations of the business. At a minimum, even if the "primarily" standard applies (it does not), it is a question of fact whether Plaintiff's primary duties related to the general operations of Townstone's business. Therefore, Plaintiff's motion must be denied. (Resp. to PSF ¶¶ 38-54; DSF ¶¶ 14-40.)

---

[7] *See also*, *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-140 (1944) (holding that, in applying the FLSA, rulings of administrator are not controlling upon courts); *Sehie v. City of Aurora*, 432 F.3d 749, 753 (7th Cir. 2005) ("Interpretations such as those in opinion letters . . . do not warrant *Chevron*-style deference."); *Great Am. Ins. Co. v. United States*, 55 F. Supp. 3d 1053, 1058 (N.D. Ill. 2014) ("the final power of interpretation is in the courts.")

### III.     Plaintiff Was an Exempt Outside Sales Employee.

Defendants' second affirmative defense is that Plaintiff was exempt as an outside salesperson.  (Dkt. 30 at 13-14.)   An employee is exempt if his primary duty is sales and he "customarily and regularly" is "engaged away from the employer's place or places of business in performing such primary duty."  29 CFR § 541.500(a).

### A.     The Facts

In his motion, Plaintiff states that he worked either "primarily" or "typically" "from inside Townstone's offices (which "functioned as Plaintiff's base for his sales duties") from Monday through Friday."  Plaintiff also states that "90 to 95% of Townstone's potential clients, or 'leads,' were generated by Hochberg and his radio show."  (PSF ¶¶ 5, 8, 12, 15, 34; Dkt. 52 at 2, 5-6.) These are the only "facts" Plaintiff presents in his motion regarding whether he performed outside sales.[8] (Dkt. 52 at 4-8.)

Plaintiff's facts are irrelevant to the determination of the outside sales exemption.  It is irrelevant that Plaintiff often, "typically," or even "primarily" worked at Townstone's office. The relevant inquiry is whether he "customarily and regularly" (*i.e.*, one or two hours a day, one or two times a week) worked away from Townstone's offices.  29 CFR § 541.500(a).  Here, Plaintiff's own admissions prove that he did.[9]  Plaintiff admitted that he "would visit a client at his or her place of business approximately once a week to pick up financial documents necessary to complete the loan application process and/or obtain client signatures on required documents.

---

[8] Plaintiff did not receive 95% of his leads from Townstone.  Instead, , it is undisputed that 48, or one-third, of all of Plaintiff's sales came from his own leads. (Resp. to PSF ¶ 8; DSF ¶ 43.)

[9] While not dispositive of his actual duties and responsibilities, it is interesting to note that Plaintiff places significance on his employment agreement, which states that he is being employed as a salesperson.  (Dkt 52 at 10; Dkt. 53 ¶ 2.)  Plaintiff, however, ignores that the same employment agreement states that: "[e]mployee agrees that such services will be performed away from [Townstone's] place of business." (DSAF ¶ 18.)

Plaintiff's visits with clients lasted approximately 30 minutes to 1.5 hours." (DSF ¶ 42; Resp. to PSF ¶ 34; DSAF ¶¶ 2-5.) This alone is enough for Plaintiff to qualify for the outside sales exemption. *See* 29 CFR § 541.500(b) ("[W]ork performed incidental to and in conjunction with the employee's own outside sales or solicitations, *including incidental deliveries and collections*, shall be regarded as exempt outside sales work.") (emphasis added).

But there is much more. Plaintiff testified that, in addition to meeting clients, he regularly met outside of the office with referral sources "two or three times a month;" attended seminars once every four or five months; attended real estate brokers' open houses "a few times a month;" and attended closings. (DSF ¶¶ 34-38; DSAF ¶¶ 2-5; Resp. to PSF ¶ 34.) Taken together, Plaintiff engaged in some type of outside sales activities at least one or two hours a week, every week while he was employed at Townstone.

Plaintiff's testimony is further corroborated by documents that show he engaged in more outside sales activities than he even begrudgingly would admit. For example, Plaintiff regularly emailed his colleagues that he was leaving the office "on sales calls;" for "meetings" at "my clients offices;" "to meeting with Financial Planner;" for "realtor meeting(s);" "dropping off biz cards;" "sponsor[ing] brokers open [houses];" "[m]eeting a client for lunch;" "having breakfast with my realtor;" "taking realtor to breakfast;" "going to hit some broker open [houses];" at "coffee w/ realtor;" "going to spread some holiday cheer;" and at "coffee with a colleague." (DSF ¶ 37; *see also* DSF ¶¶ 36 and 38 for Plaintiff's marketing plan and resume touting his outside sales activities.) Likewise, Plaintiff's former co-workers all testified that they (and Plaintiff) were expected regularly conducted outside sales activities. (DSF ¶ 39, including Ex. P, thereto, at 96:16-97:8 (Plaintiff met with realtors).)

Finally, Plaintiff's outside sales efforts were successful. More than one-third of all of his loans were from his own leads, and pursuant to his employment contract, he was paid more for loans closed from his own leads. (DSF ¶ 43; Resp. to PSF ¶ 8.)

**B.    The Law — which Plaintiff surprisingly cites as "Analogous" — Mandates Denying Plaintiff's Motion and Granting Defendants' Motion.**

The case law cited by *Plaintiff* mandates that summary judgment be entered against him. Remarkably, Plaintiff cites to two cases – *Dixon* (cited at p. 7) and *Hartman* (cited at p, 10) – that stand for the proposition that even employees who work in an office the majority of the time can qualify as exempt outside salespersons. *See also Hartz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 619 (E.D.Va. 2014) (granting summary judgment to mortgage loan employer where loan officer performed tasks away from the office on a greater than occasional basis).

In *Dixon*, the Court held that "[t]he fact that an employee also performs significant work inside the office does not bar the [outside sales] exemption," 11 F. Supp. 3d at 610, and that the customarily and regularly standard can be met merely by conducting outside sales activity one or two times a day, one or two times per week. *Id.* As here, the employee admitted that she spent time out of the office "contacting referral sources … attending seminars and trade shows, meeting with financial planners and realtors, and giving presentations." *Id.* at 611. The *Dixon* court rejected the employee's efforts "to recast" this work as non-exempt "promotional work," and held that her meetings with referral sources (like Plaintiff's similar meetings) were outside sales activities "performed *incidental to and in conjunction with* an employee's own outside sales or solicitations is exempt work" *Id.* at 609, 619, *quoting* 29 C.F.R. § 541.503(a) (emphasis added); *see also Hartman,* 11 F. Supp. 3d at 603 (entering summary judgment for the employer after employee testified that she regularly spent time out of the office "attending open houses, auctions, closings, settlements, and chamber of commerce meetings. In conjunction with these

13

efforts, the employee spent several hours *per month* [*i.e.*, not per week] creating marketing materials … [meeting] with other professionals to help generate more business.").[10]

In sum, as in *Dixon* and *Hartman*, Plaintiff's admissions that he regularly met with customers, referral sources, attended open houses, and attended closings mandate that the Court deny his motion for summary judgment and enter judgment in favor of Defendants on Counts I and II.

## IV.  Plaintiff is Exempt Under the Combination Exemption.

Plaintiff also moves for summary judgment regarding Defendants' third affirmative defense (Dkt. 30 at 14) – the combination exemption.  (Dkt. 52 at 15-17.)  The Court should deny this portion of Plaintiff's motion because, if Plaintiff is not exempt under the administrative or outside sales exemptions, Plaintiff alternatively is exempt because he: (1) performed a combination of exempt administrative and exempt outside sales duties; and (2) made more than $455 a week. *See* 29 C.F.R. § 541.708; *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 632 (7th Cir. 2010).

"[T]he combination exemption addresses the situation that exists when an employee does not meet the primary-duty requirement of any individual exemption." *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 294 (4th Cir. 2007).  For example, a plaintiff might perform exempt administrative duties and exempt outside sales duties, but neither the administrative nor sales duties constitute

---

[10] Plaintiff also devotes two pages of his brief to *Wolfram v. PHH Corp.*, No. 1:12-CV-599, 2014 WL 2737990 (S.D. Ohio June 17, 2014), which he calls "analogous" (Dkt. 52 at 6), for the uncontroversial proposition that an employer's office and the employee's home constitute the employer's place of business. (Dkt. 52 at 5-6.) Defendants agree with that general proposition, but Defendants do not assert that any of the time Plaintiff claims to have worked from home counts toward the outside sales exemption.  In any event,  the *Wolfram* court *denied* plaintiffs' motion for summary because there was a genuine issue of material fact. *Id.* at *9.

plaintiff's "primary duty." *Id.*[11] The combination exemption permits courts to combine these different exempt duties for purposes of meeting the "primary duty" requirement. *Id.*; *see also Schmidt*, 599 F.3d at 632-33 (combination exemption provide an additional alternative exemption).

Here, Plaintiff performed both administrative duties and outside sales duties. Plaintiff's attempts to distinguish *Schmidt* on this point are unavailing. (Dkt. 52 at 16). In *Schmidt*, both the lower court and Seventh Circuit found that the plaintiff was exempt as an outside salesperson – like the Court can and should hold in this case. Both courts, however, held that even if the plaintiff did not independently satisfy the outside sales exemption, she met the requirements of more than one exemption, even if both sales and administrative functions were not her primary roles. *Schmidt*, 599 F.3d at 632-33

Like the employee in *Schmidt*, Plaintiff customarily and regularly engaged in exempt administrative work. (*See* discussion at pp. 8-9, *infra*.) Plaintiff also customarily and regularly engaged in outside sales. (*See* discussion at pp. 11-13, *infra*.) Further, it is undisputed that Plaintiff made more than $455 a week. Accordingly, Plaintiff is exempt under the combination exemption.[12]

---

[11] Of course, to satisfy the outside sales exemption, Plaintiff's primary duty must be sales, but he only has to "customarily and regularly" perform outside sales work. 29 C.F.R. § 541.500(a).

[12] While Plaintiff asks the Court to enter summary judgment on the issue of liability, he devotes none of his brief to discussing whether it is undisputed that he ever worked more than 40 hours in any week. Plaintiff has not provided any evidence other than his bare "estimate" that he worked between 50 and 60 hours per week. (Dkt. 52 at 3; Dkt ¶ 37.) Plaintiff could not describe any specific work he was doing for specific Townstone customers (or Townstone itself) during these alleged overtime work periods (Resp. to PSF ¶ 37.) Thus, not only should Plaintiff's motion be denied, the Court should grant summary judgment in favor of Defendants for this additional reason. *See, e.g., Santiago v. Saunders*, 2015 WL 4454782, *2 (S.D. Fla. July 20, 2015) ("the plaintiff cannot create *Anderson's* reasonable inference of underpayment if he cannot recall the vaguest details of the time he worked and the hours for which he was underpaid."); *Simmons v. Wal-Mart Associates, Inc.*, 2005 WL 1684002 (S.D. Ohio 2005) (summary judgment granted where plaintiff merely asserted that he worked off the clock over 200 times on unspecified days) At a minimum, given the contrary testimony of his colleagues and the documentary evidence showing that

**V.      The Court Should Enter Summary Judgment in Favor of Defendants on Plaintiff's Retaliation Claim.**

Plaintiff also seeks summary judgment on his retaliation claim (Count III).  (Dkt. 52 at 17-20.)  Not only should the Court deny Plaintiff's motion, based solely on the facts asserted by Plaintiff in paragraphs 57 through 62 of *his* statement of material facts, the Court should grant summary judgment in favor of Defendants on Count III.[13]

To prove his retaliation claim, Plaintiff must show that he "engaged in protected expression, that [he] suffered an adverse employment action, and that a causal link existed between the protected expression and the adverse action." *Shadduck v. United Parcel Serv., Inc.*, No. 10-C-2203, 2011 WL 4452210, *2 (E.D. Ill. Sept. 26, 2011) (citing *Scott v. Sunrise Healthcare Corp.*, 195 F.3d 938, 940 (7th Cir. 1999)).  To constitute a protected expression, "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint–Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).

A complaint is "sufficiently clear" *only* if the employee complains about a situation in which the FLSA might have been violated ***and*** suggests that the situation is illegal. *See, e.g., Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 969 (7th Cir. 2012) (on

---

Plaintiff was not working after hours, it is a question of fact whether Plaintiff ever worked more than 40 hours in any given week.  *See, e.g., Reynoso v. Motel LLC*, 71 F. Supp. 3d 792 (N.D. Ill. 2014) (genuine issues of material fact existed as to number of hours employee actually performed work); *Blakes v. Illinois Bell Tel. Co.*, 75 F. Supp. 3d 792, 814-15 (N.D. Ill. 2014) (same) (credibility dispute concerning hours worked cannot be resolved on summary judgment).

[13] After receiving Plaintiff's motion for summary judgment, Defendants sought to file their own motion for summary judgment on Count III.  The Court advised that it would consider Defendants' request as part of Defendants' response to the Plaintiff's motion.  (Dkt. 62.)

remand from the Supreme Court).[14] Mere demands "for more compensation are not protected activity[.]"*Perez v. Brands Mart Serv. Corp.*, 2011 WL 3236022, *9 (S.D. Fla. July 28, 2011) (summary judgment for employer because plaintiff's statement that he would not "work for free"[15] was insufficient to maintain a retaliation claim). "Though a plaintiff need not explicitly refer to the FLSA statute itself, *the complaint does need to be framed in terms of potential illegality*." *Cotto v. John C. Bonewicz, P.C.*, 2015 WL 3609167, *7, 9 (N.D. Ill June 9, 2015) (emphasis added).

Plaintiff's complaints amount to nothing more than mere "demands for more compensation" for the hours he was working. (*See* Dkt. 53 at ¶ 57 ("Plaintiff complained about working too many hours without adequate compensation."); ¶¶ 58-59 ("Plaintiff complained about forwarding his office line to his personal cell phone" and about Defendants not paying his cell phone bill); ¶ 60 ("Plaintiff and Sturner exchanged a series of emails in which Plaintiff complained about working all hours of the night . . . .").) These are Plaintiff's *only* alleged complaints about compensation. Plaintiff does not allege (nor, can he) that he specifically asserted his rights under the FLSA, nor does he allege that he even asked for overtime pay. Thus

---

[14] While the court in *Kasten* ruled in favor of the employee, the facts in *Kasten* are 180 degrees the opposite of the facts in this case. In *Kasten,* the plaintiff told the employer that the location of its time clocks was "illegal," and that that he was "considering starting a lawsuit about it." *Id.* at 969.

[15] Plaintiff cites *O'Donnell v. America At Home Healthcare & Nursing Services, Ltd.*, 2015 WL 684544, *6 (N.D. Ill. Feb. 17, 2015) for the proposition that "a refusal to work for free is an assertion of one's right to compensation under the statute — and thus, a complaint filed within the meaning of the Act." (*See* Dkt. 52 at 18.) *O'Donnell* does not stand for this blanket proposition. There, the plaintiff (O'Donnell) already had been paid for more than 450 hours of overtime, and his employer asked him to repay his overtime compensation. *Id.* at *2. O'Donnell specifically advised that it would be illegal to make him return the money. *Id.* at *2. Here, Plaintiff never discussed the subject of overtime, or the potential illegality of Defendants' conduct. Indeed, if Plaintiff's reading of *O'Donnell* were correct, then any employee could invoke the FLSA merely by uttering the words: "I won't work for free," and nothing more. The case law dispels this absurd notion.

even if true, Plaintiff's alleged complaints about purportedly inadequate compensation concerned *only* his demand for reimbursement for his personal cell phone bill — not unpaid overtime.

Even if Plaintiff's purported complaints somehow could be construed as an assertion of rights under the FLSA (they cannot), they were buried within a "litany" of other complaints about his office line being forwarded to his personal cell phone, about Townstone not paying for his cell phone bill, and about having to work while on vacation. (*See id.* ¶¶ 58-60.) As in *Dunn*, these complaints "plainly concern non-FLSA matters," and therefore the Court should grant summary judgment in favor of Defendants on Count III.

Even if Plaintiff's complaints somehow can be construed as concerning overtime pay, Plaintiff still loses because none were "framed in terms of potential illegality." Plaintiff only alleges that he "complained about working too many hours without adequate compensation." (*See* Dkt. 53 at ¶ 57.) But Plaintiff does not point to any facts to show that he suggested his working conditions might be illegal or that he threatened legal action. As in *Cotto*, nothing about Plaintiff's alleged complaints suggests that he was asserting a *legal right* to *overtime pay*. Instead, Plaintiff's complaints resemble nothing more than textbook "vague expressions of discontent." *Cotto*, 2015 WL 3609167, *9. Accordingly, for this additional reason, the Court must grant summary judgment in favor of Defendants on Count III.

Even if Plaintiff's own "facts" somehow support his motion for summary judgment, those facts are in dispute. Defendants deny that: (a) Plaintiff ever complained about working more than 40 hours per week; and (b) they fired Plaintiff because of his purported complaints. Instead, Defendants fired Plaintiff after repeatedly warning him that he was not acting in accordance with Defendants' compliance policies. (DSAF ¶¶ 16-17, 20.)

18

## <u>CONCLUSION</u>

Based on the foregoing, the Court should deny Plaintiff's motion for summary judgment and enter summary judgment in favor of Defendants on all Counts of Plaintiff's Amended Complaint.

Dated:  May 2, 2016                 Respectfully submitted,

                                       TOWNSTONE FINANCIAL, INC.,
                                       BARRY STURNER, and DAVID HOCHBERG

                                 By: <u>/s/Jonathan M. Cyrluk</u>
                                         One of their Attorneys

Jonathan M. Cyrluk (cyrluk@carpenterlipps.com)
Josh Goldberg (goldberg@carpenterlipps.com)
CARPENTER LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2640
Chicago, Illinois 60601
Phone:  (312) 777-4300